v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF PUBLIC WELFARE, ALLEGHENY COUNTY CHILDREN & YOUTH SERVICES, Appellee.**

Supreme Court of Pennsylvania.

Submitted March 11, 1992.

Decided May 10, 1994.

118

Carol S. Mills McCarthy, McCarthy & McCarthy, Pittsburgh, for appellant.

John Kane, Chief Counsel, Myra Werrin Sacks, Asst. Counsel, Dept. of Public Welfare, Harrisburg, for appellee.

James Dodaro, Allegheny County Sol., James Esler, Carla F. Hobson, John T. McVay, Jr., Asst. County Solicitors, for Children and Youth Services.

Before NIX, C.J., and FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY, CASTILLE and MONTEMURO, JJ.

## OPINION

MONTEMURO, Senior Justice, Sitting by Designation.

On December 7, 1988, the Allegheny County Children and Youth Services Office ("Agency") filed an indicated report of child abuse against appellant, A.Y., and listed her on the Statewide Child Line and Abuse Registry as a suspected child abuser.[1]

---

1. *See* The Child Protective Services Act of November 26, 1975, P.L. 438 *as amended,* 11 P.S. §§ 2201–2224. The Act has been repealed and modified. *Now see* Act of December 19, 1990, P.L. 1240, 23 Pa.C.S. §§ 6301–6384.

 At the time the allegations were made against the appellant, the Child Services Law defined an indicated report as the following:

 "Indicated report" means a report made pursuant to this act if an investigation by the child protective service determines that substan-

The listing of appellant on this registry occurred after the parents of a three-year old girl, L.K., reported an incident to the Child Protective Services Department of the Agency. The parents alleged that appellant watched L.K. while they went out on evening of October 28, 1988. The next day L.K.'s mother asked her what she did during the time A.Y. watched her. L.K. allegedly told her mother that A.Y. licked parts of her body including the vaginal area and buttocks. The next day L.K. relayed the same incident to her father pursuant to urging by her mother. On or about November 1, 1988, L.K.'s parents contacted appellant and made her aware of the aforementioned allegations.

On November 15, 1988, L.K.'s parents took her to the Family Intervention Center at Children's Hospital and was interviewed jointly by an Agency case worker and a representative of the Family Intervention Center. L.K. allegedly told the interviewers that the appellant had licked her vaginal area and buttocks. L.K. was given an anatomically correct doll and she demonstrated the same by licking its vaginal area and buttocks. After letters were sent informing appellant of the investigation, a representative of the Agency interviewed the appellant. Appellant denied all allegations, and further denied that she had behaved in any inappropriate manner. After this interview, the agency concluded that child abuse was "indicated" and filed the appellant's name with the child abuse registry. The appellant received proper notice of the report as dictated by the statutory guidelines.

The appellant made a request for the expungement of her name from the registry, which was denied. She then filed an appeal with the Commonwealth Department of Public Welfare Office of Hearings and Appeals ("Department"), and a hearing was conducted by an administrative hearing officer.[2] The

tial evidence of the alleged abuse exists based on (i) available medical evidence, (ii) the child protective service investigation or (iii) an admission of the acts of abuse by the child's parent or person responsible for the child's welfare.

11 P.S. § 2203, repealed and reenacted at 23 Pa.C.S. § 6303.

**2.** The Child Services Law further states:

evidence presented on behalf of the Agency consisted of the following: testimony by the investigating caseworker; testimony by the representative of the Family Intervention Center; and testimony by L.K.'s mother. Appellant testified on her own behalf, and presented testimony from her former supervisor and her parents. She provided reports from a therapist she had retained after the aforementioned allegations arose, and offered a report from a polygraph examination. The hearing officer received the latter report, but did not consider it since it was not valid under the laws of this Commonwealth.

The hearing officer also gave no weight to the testimony of any of A.Y.'s witnesses on the grounds that they had no direct knowledge of what had transpired on the night in question, but concluded that the testimony from the Agency workers and L.K.'s mother provided substantial evidence in support of the indicated report of child abuse. Denial of the appeal was accordingly recommended. The Director of the Office of Hearings and Appeals fully adopted this decision. On appeal, the Commonwealth Court affirmed 136 Pa.Commw. 451, 583 A.2d 515. The appellant thereafter filed a petition for allowance of appeal with this Court, which was granted. 527 Pa. 594, 588 A.2d 915 (1991).

> When a report of suspected child abuse is determined by the appropriate child protective service to be a founded or indicated report, the information concerning such report of suspected child abuse shall be expunged forthwith from the pending complaint file and an appropriate entry shall be made. in the Statewide central register. Notice of such determination must be given to the subjects of the report shall include notice that their ability to obtain employment in a child care facility or program may be adversely affected by entry of the report in the Statewide central register. The notice shall also inform the subject of the report of his right, at any time, to request the secretary to amend, seal or expunge information contained in the Statewide central register and his right to a hearing if the request is denied. When a report of suspected child abuse is determined by the appropriate child protective service to be an unfounded report, the information concerning such report of suspected child abuse shall be expunged from the pending complaint file within 12 months of the date the report was received by the department....
>
> 11 P.S. § 2214(h), repealed and reenacted at 23 Pa.C.S. §§ 6337(a), 6338(a).

Appellant now raises three issues: (1) whether the Office of Hearings and Appeals erred in basing its decision solely on hearsay evidence; (2) whether appellee's evidence met the necessary standards for admissibility of hearsay evidence; and (3) whether the evidence *in toto* satisfied the standard to support a report of indicated abuse.

In response, the Agency and the Department contend: (1) that, because this was an administrative hearing, the relaxed evidentiary standards used by the hearing officer were proper; and, (2) that there existed substantial evidence in support of the Agency's conclusion. For the reasons set forth below, we reverse the order of the Commonwealth Court.

 Under the Commonwealth's Administrative Agency Law: Commonwealth agencies shall not be bound by technical rules of evidence at agency hearings, and all relevant evidence of reasonably probative value may be received. Reasonable examination and cross-examination shall be permitted. 2 Pa. C.S. § 505.[3] This statutory maxim has been correctly interpreted to mandate a relaxation of the strict rules of evidence in Agency hearings. To this end, hearsay evidence not otherwise admissible in a court proceeding can generally be received and considered by an administrative agency. However, in the administrative forum there has not been an abandonment of all rules of evidence, and the courts of this commonwealth have circumscribed the occasion and the use of hearsay evidence in agency proceedings.

In the case of *McCauley v. Imperial Woolen Co., et al.*, 261 Pa. 312, 104 A. 617 (1918), this Court, discussing the statutory relaxation of evidentiary standards, stated:

These provisions do not mean, however, that either the referee or board has the right to find material facts on hearsay alone, whether such evidence is developed in the course of formal hearings or in less formal investigations; for, in the first place, the rule which forbids the making of material findings on hearsay alone, is more than a technical rule of evidence, and, next, there is nothing in the act before

3. Act of April 28, 1978, P.L. 202, No. 53, § 5.

us which justifies the conclusion that the legislature intended any such loose method for determining material facts. *Id.* at 325–326, 104 A. at 622.

The Court in *McCauley* was addressing itself to the conduct of a Workmen's Compensation proceeding. However, the Commonwealth Court in unemployment compensation proceedings has consistently held that:

> Hearsay evidence, *properly objected to*, is not competent evidence to support a finding of the Board. Hearsay evidence, *admitted without objection*, will be given its natural probative effect and may support a finding of the Board, *if it is corroborated by any competent evidence in the record*, but a finding of fact based solely on hearsay will not stand.

*Walker v. Unemployment Compensation Board of Review*, 27 Pa.Commw. 522, 527, 367 A.2d 366, 370 (1976). (Citations omitted.)

In other administrative agency proceedings, the Commonwealth Court has held that the hearsay rule is not a. mere technical rule of evidence, but a fundamental rule of law which ought to be followed by agencies when *facts crucial to the issue* are sought to be placed on the record and an objection is made thereto. *See Commonwealth, State Board of Medical Education and Licensure v. Contakos*, 21 Pa.Commw. 422, 346 A.2d 850 (1975); *Bleilevens v. Commonwealth, State Civil Service Commission*, 11 Pa.Commw. 1, 312 A.2d 109 (1973).[4]

---

**4.** The United States Supreme Court, addressing procedural due process concerns in the context of federal administrative procedures, has held:

> Procedural due process imposes constraints on governmental decisions which deprive individuals of "liberty" or "property" interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.

*Mathews v. Eldridge*, 424 U.S. 319, 332, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976). The court in *Mathews* further determined that in order to evaluate such due process concerns the following three factors must be considered:

> first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest, through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administra-

However, in child abuse expungement cases, the Commonwealth Court has significantly relaxed the principles it had previously announced concerning hearsay evidence. *See L.W.B. v. Sosnowski,* 117 Pa.Commw. 120, 543 A.2d 1241 (1988).

In *Sosnowski,* a case similar to the one at bar, the Commonwealth Court determined that the same statutory standard regarding hearsay testimony involving a child in dependency proceedings would be applicable in administrative expungement hearings involving child sexual abuse. This dependency statute provided in relevant part:

> A statement made by a child describing acts and attempted acts of indecent contact, sexual intercourse or deviate sexual intercourse or deviate sexual intercourse performed with or on the child by another, not otherwise admissible in evidence in a dependency proceeding initiated under Chapter 63 (relating to juvenile matters), involving that child or other members of that child's family, if a court finds that the time, content and circumstances of this statement provide sufficient indicia of reliability.[5]

42 Pa.C.S. § 5986

Additionally, in both the *Sosnowski* case and the instant case, the Commonwealth Court determined that it was proper

tive burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335, 96 S.Ct. at 903. Although in *Mathews* the court applied these standards to the administrative determinations made under the disability insurance program administrated jointly by state and federal agencies, the court has since applied it in several other administrative proceedings. *See Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) (involving state-initiated parental rights termination proceedings); *Addington v. Texas,* 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979) (involving Texas law governing civil involuntary commitments).

5. Commonwealth Court cases which followed *Sosnowski* have held that some factors which will provide the necessary indicia of reliability include:

> [the] caseworker's educational background and training, the duration of her employment with the child protective service, and [whether] that her investigation followed the procedures delineated in the law.

for hearing officers to base their decision *solely* on the hearsay testimony of the family and the experts.

The threshold question for us to resolve is whether the Commonwealth Court's "new" standards for the reliance upon hearsay evidence in expungement cases are proper.

■ Child abuse cases pose unique problems of proof, especially where there exists no independent physical evidence of abuse. For this reason, we cannot, especially in the format of administrative proceedings, categorically bar the hearsay testimony of the child victim.

■ However, there is a significant difference between admitting hearsay evidence and according it the proper weight. In acknowledging this distinction, we emphasize that an accused person even in the context of a "non-criminal" proceeding is not without his or her rights to due process. Although less process is due in an administrative proceeding than where criminal charges have been brought, an administrative adjudication of suspected child abuse is of the most serious nature. Therefore, this society, which was founded upon, *inter alia,* its citizens' "inherent and indefeasible rights ... of acquiring, possessing and protecting property and *reputation*,"[6] cannot blithely surrender those rights in the name of prosecutorial convenience.

The problem with *Sosnowski* and its progeny is not the standard announced for the *admission* of hearsay testimony, it is the fact that it has made it possible for accusations of child abuse, as reported by a third party, to constitute sufficient substantive evidence to register an individual citizen on a "black list" for all time. Moreover, because of the nature of these charges, the existence of a record involving such charges

Further, [whether] the statements made by the subject child were. . . . likely to be the result of fantasy or coaching by a third party. *See G.W.K. v. Commonwealth of Pennsylvania, Department of Public Welfare,* 125 Pa.Commw. 512, 518, 558 A.2d 151, 154 (1989).

6. Pa. Const. art. I, § 1 (emphasis added).

cannot be underestimated.[7]

In this instance, the appellant's name was placed on a statewide registry without there having been any adjudication; then when appellant was required to institute an expungement proceeding, the Agency was able to justify its action without producing the victim, any independent corroborative evidence, any recording of the victim's interview, not even a verbatim transcript of the victim's statement. Instead, the Agency was able to rely on its own employees' recitation of what the three-year old child stated had occurred. The effect of this procedure was to totally deny the appellant the ability to review or challenge the evidence against her, and perhaps more importantly, it prevented the hearing officer from having any opportunity to judge the evidence except through the prism provided by the Agency. We think more is required.

 Consequently, in keeping with these concerns, we are compelled to hold that the appellant here was entitled to far more protections than she received, and to that end, we announce the following guidelines[8] to be employed in these types of proceedings:[9]

7. It should be noted that, at the time of the alleged incident, A.Y. was a 23 year old college graduate with a degree in psychology. She was pursuing a career involving family crisis. The effect of placing appellant's name on this registry was effectively to deny her any opportunity for employment in her field of study.

8. These guidelines are taken from Rule 807 of the Uniform Rules of Evidence as proposed by the National Conference of Commissions on Uniform State Laws in 1986.

9. We note that the legislature has since provided a general standard for the admissibility for such statements in criminal proceedings. The following was not available at the time the *Sosnowski* court relied on the standard set forth for child dependency proceedings:

(a) General rule. An out-of-court statement made by a child victim or witness, who at the time the statement was made was 12 years of age or younger, describing indecent contact, sexual intercourse or deviate sexual intercourse performed with or on a child by another, not otherwise admissible by statute or rule of evidence, is admissible in evidence in any criminal proceeding if:

(1) The court finds, in an in camera hearing, that the evidence is relevant and that the time, content and circumstances of the statement provide sufficient indicia of reliability.

(2) The child either:

1. Hearsay testimony of a child victim will be admitted in accordance with the standards set forth in 42 Pa.C.S. § 5986, and this rule shall be applied to permit the testimony of the victim's parents and other family members as well as those professionals charged with investigating incidents of child abuse;

2. Hearsay testimony in conjunction with admissible corroborative evidence of the act(s) in question can *in toto* constitute substantial evidence which will satisfy the Agency's burden to justify a conclusion of abuse.

3. However, *uncorroborated* hearsay cannot satisfy the Agency's burden unless it comports with the following requirements:

a) the statement was accurately recorded by audio or video equipment;

b) the audio-visual record discloses the identity and at all times included the images and/or voices of all individuals present during the interview of the minor; and

c) the statement was not made in response to questioning calculated to lead the minor to make a particular statement and was not the product of improper suggestion.

Accordingly, the Order of the Commonwealth Court is reversed and this case is remanded to the Commonwealth Department of Public Welfare Office of Hearings and Appeals for a proper determination consistent with this decision.

CASTILLE, J., files a concurring opinion which is joined by PAPADAKOS, J.

MONTEMURO, J., is sitting by designation as Senior Justice pursuant to Judicial Assignment Docket No. 94 R1800, due to the unavailability of LARSEN, J., see No. 127 Judicial Administration Docket No. 1, filed October 28, 1993.

(i) testifies at the proceeding; or
(ii) is unavailable as a witness and there is corroborative evidence of the act.
42 Pa.C.S. § 5985.1, Act of Dec. 22, 1989, P.L. 730, No. 100, § 1.

CASTILLE, Justice, concurring.

I agree that the Commonwealth Court should be reversed. I also agree that a remand of this case, consistent with the guidelines established by the majority, is appropriate to reevaluate the facts as alleged in this case.

I write separately, however, to advance the simple but critical proposition that the fact finder on remand must equally dispense credibility determinations. Below, both of appellant's parents with whom she resides offered character testimony. They testified as to appellant's good character and lack of propensity to engage in the acts of which are the subject of this case. Also, the appellant offered character evidence from prior employers who knew her and had observed her working with children. However, the hearing officer refused to consider testimony of the appellant's good character. She excluded such testimony because the witnesses preferred by the appellant had no direct knowledge of the events alleged to have occurred on the evening in question. On the other hand, the hearing officer credited the Commonwealth's witnesses' testimony although they too had no direct knowledge of the incident at issue. As such, the hearing officer unjustifiably held the two parties' witnesses to different standards. She subjected the appellant's witnesses to a "direct knowledge" standard but allowed the Commonwealth's witnesses to testify freely about events that they directly had no knowledge concerning. Such a disparate application of the admittedly relaxed rules of evidence in administrative hearings cannot withstand this Court's scrutiny.

Moreover, in Pennsylvania evidence of good character has long been held to be sufficient to raise a reasonable doubt in a criminal proceeding and form the basis of an acquittal in and of itself. *Commonwealth v. Scott*, 496 Pa. 188, 436 A.2d 607 (1981). Here, the hearing officer refused to consider testimony as to the appellant's good character. Although the *Scott* rule is limited to criminal proceedings, its application has a strong foothold in administrative adjudications, and it is especially appropriate in a case in which an adverse decision could seriously injure the appellant's chances for future professional

success. *See Goldberg v. Kelly,* 397 U.S. 254, 269, 90 S.Ct. 1011, 1021, 25 L.Ed.2d 287 (1970); *Callahan v. Pennsylvania State Police,* 494 Pa. 461, 431 A.2d 946 (1981) (both cases applying criminal due process requirements to administrative proceedings). In the instant case, the hearing officer's decision may well have been different if she had given weight to appellant's character testimony.

I also write separately to criticize the lower tribunals' cavalier treatment of the appellant's interests in this case. The appellant worked in family counseling and child care since earning her psychology degree in 1987. Her career ambitions were to work with families in crisis. As she seeks employment involving direct contact with children, the Department of Public Welfare must certify to the prospective employer whether an indicated report of abuse was made within the preceding one-year period. 23 Pa.C.S.A. § 6344 (Purdon Supp.1993).[1] Although the statute does not *per se* prevent the appellant from seeking such work, the circulation of an indicated abuse report will effectively deny her and others on this "blacklist" any meaningful opportunity for such work surely for the one-year period of the statute and, perhaps, permanently to the extent its information is made available. On this basis, I would remand with instructions to give the appropriate weight to the testimony proffered by appellant in order to assure a fair hearing for all parties in this matter.

PAPADAKOS, J., joins in this concurring opinion.

---

1. Admittedly, this one-year period has passed, making the issue technically moot. However, it is nonetheless justiciable by this Court under the exception to the mootness doctrine as being capable of repetition, yet evading review. *See In re Seegrist,* 517 Pa. 568, 539 A.2d 799 (1988).