Richard Scott MORTIMORE, Petitioner,

v.

PENNSYLVANIA DEPARTMENT OF PUBLIC WELFARE, Respondent.

Commonwealth Court of Pennsylvania.

Argued Nov. 19, 1996.
Decided Feb. 11, 1997.
Publication Ordered July 2, 1997.

David M. Axinn, Hollidaysburg, for petitioner.

Tamara E. Showalter, Lancaster, for intervenor, Bedford County Children & Youth.

Before SMITH and LEADBETTER, JJ., and SILVESTRI, Senior Judge.

SMITH, Judge.

Richard Scott Mortimore (R.S.M.) petitions for review of a final order of the Department of Public Welfare, Office of Hearings and Appeals (OHA), that adopted in its entirety the recommendation of an attorney examiner denying R.S.M.'s appeal of an indicated report of child abuse listing him as the perpetrator. R.S.M. questions whether the child victim's statements were properly admitted into evidence, where the interviews were not recorded, no established protocol was followed and no psychological evaluation of the child victim was obtained. He also questions whether OHA's order is supported by substantial evidence, where identification of R.S.M. as the perpetrator allegedly was based upon uncorroborated and unrecorded hearsay.

A.M., the daughter of R.S.M., father, and D.S., mother, was born on February 17, 1989. On August 7, 1993 at approximately 7:00 p.m., S.M. and R.M., the paternal grandparents picked up A.M. at the home of the maternal grandmother, J.C., for a 24–hour visitation period at their home. The child's father, who resides with the paternal grandparents, was home during this visitation period. When A.M. returned to her maternal grandmother on August 8, 1993 at approximately 6:00 p.m., A.M. complained of pain in the area of her vulva. The maternal grandmother discovered swelling and redness in that area as well as blood in the child's underwear. Thereafter, A.M.'s mother and maternal grandmother took A.M. to the emergency room at Bedford County Hospital where she was examined by Dr. Marc Finder and also interviewed by Doug Diehl, a local law enforcement officer. Dr. Finder examined the child without the mother or maternal grandmother present. His examination of A.M. revealed circular bruises on both hips, which were approximately a centimeter and a half in diameter, small vulva tears, redness in the vaginal area and a bleeding bruise on the hymen. Dr. Finder then reported an incident of suspected child sexual abuse to Childline.

Upon receipt of the suspected report of an incident of child sexual abuse, Bedford County Children and Youth Services (CYS) initiated a child protective service investigation. CYS caseworker Susan Gonzalez first interviewed A.M. on August 9, 1993. Gonzalez interviewed A.M. again on August 18 and August 25, 1993. CYS also interviewed A.M.'s father, mother and her husband, the paternal grandparents and maternal grandmother in August 1993. The child's father stated that he was only allowed to help dress A.M. on occasion under supervision. Following its investigation, an indicated report of child abuse was filed naming the father as the perpetrator. He requested that CYS remove his name as the alleged perpetrator; CYS denied his request and an appeal followed.

At the appeal hearing, CYS presented the testimony of Dr. Finder, who stated that upon examining A.M., he observed fresh blood coming through the wound and opined that the injury was no more than 24 hours old. Dr. Finder further testified that the injuries sustained by A.M. resulted from direct contact to the genital area by an object. CYS also presented the testimony of Susan Gonzalez, who stated that she took contemporaneous notes of what A.M. said during the interviews. Gonzalez recalled that A.M. stated on three separate occasions that her daddy hurt her "pee pee" and that the assault occurred at the residence of the paternal grandparents. A.M. demonstrated the same with anatomically correct dolls.

The child's father presented the testimony of the paternal grandparents, who stated that their son was never alone with A.M. during the 24–hour visitation period; however, they were busy entertaining out-of-town guests during the 24–hour period. The paternal grandmother testified that she observed redness in A.M.'s genital area as well as blood in her underwear, which she attributed to a urinary tract or kidney infection. Neither of the paternal grandparents disclosed to the maternal grandmother that A.M. had blood on her underwear.

 Based upon the testimony presented, the attorney examiner found that A.M. was in the care and custody of her paternal

grandparents from 7:00 p.m. on August 7, 1993 until 6:00 p.m. on August 8, 1993; that A.M.'s father had access to A.M. during the visitation period; that A.M. was sexually assaulted within 24 hours of the medical examination; that other individuals who had access to the child were ruled out as perpetrators; and that her father was the perpetrator because A.M. clearly and consistently stated on three separate occasions that her daddy hurt her "pee pee." The attorney examiner did not find the paternal grandmother to be credible, specifically with regard to her testimony that her son was never alone with A.M. during the 24–hour period. The attorney examiner denied the appeal and OHA affirmed.[1]

Initially, the Court will address whether the statements made by A.M. to Gonzalez met the evidentiary standards for expungement cases set forth by the Supreme Court in *A.Y. v. Department of Public Welfare, Allegheny County Children & Youth Services*, 537 Pa. 116, 641 A.2d 1148 (1994). There, the Supreme Court established guidelines for the admission of hearsay testimony of a child victim and stated that "[h]earsay testimony in conjunction with admissible corroborative evidence of the act(s) in question can *in toto* constitute substantial evidence which will satisfy the Agency's burden of proof to justify a conclusion of abuse." *Id.*, 537 Pa. at 126, 641 A.2d at 1153.

■ This Court in *B.E. re G.M. Jr. v. Department of Public Welfare*, 654 A.2d 290 (Pa.Cmwlth.1995), followed the guidelines set forth in *A.Y.* and held that medical records corroborated evidence of hearsay statements attributed to a child. In *Bedford County Children and Youth Services v. Department*

*of Public Welfare*, 149 Pa.Cmwlth. 127, 613 A.2d 48, 50 (1992), the Court defined substantial evidence in the context of child abuse expungement proceedings as "evidence which 'so preponderates in favor of a conclusion that it outweighs, in the mind of the factfinder, any inconsistent evidence and reasonable inferences drawn therefrom.'" In the case sub judice, A.M.'s statements were corroborated by medical evidence from Dr. Finder that the injuries were caused by direct trauma to the child's genital area and were sustained within 24 hours of the medical examination. This evidence constituted substantial evidence to satisfy CYS' burden of proof.

A.M.'s father asserts that the hearsay testimony lacks sufficient indicia of reliability and responsibility and he maintains that the three interviews between Gonzalez and A.M. were not recorded, that no established protocol was followed by Gonzalez and that no psychological evaluation of the child was obtained, and because Officer Diehl subjected A.M. to suggestive questioning, CYS should have interviewed the officer to determine the effect that his interview had on A.M.'s subsequent statements to Gonzalez.

■ Hearsay testimony of a child victim may be admitted through the testimony of the child's family and the professionals who investigated the abuse incident if the time, content and circumstances under which the statements were made provide sufficient indicia of reliability in accordance with Section 5986 of the Judicial Code, 42 Pa.C.S. § 5986.[2] *See A.Y.* This Court stated that some factors which will provide the necessary indicia of reliability are the educational background of the caseworker, the duration of his or her

---

1. On appeal from a final administrative order, this Court's scope of review is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether legal error has been committed or whether constitutional rights have been violated. *B.E. re G.M. Jr. v. Department of Public Welfare*, 654 A.2d 290 (Pa.Cmwlth.1995). The Secretary of the Department of Public Welfare, or OHA as her designee, is the ultimate fact finder in a hearing to determine whether to expunge an indicated report of child abuse. *G.S. v. Department of Public Welfare*, 104 Pa.Cmwlth. 84, 521 A.2d 87 (1987).

2. 42 Pa.C.S. § 5986 provides:

A statement made by a child describing acts and attempted acts of indecent contact, sexual intercourse or deviate sexual intercourse performed with or on the child by another, not otherwise admissible by statute or court ruling, is admissible in evidence in a dependency proceeding initiated under Chapter 63 (relating to juvenile matters), involving that child or other members of that child's family, if a court finds that the time, content and circumstances of this statement provide sufficient indicia of reliability.

employment with the child protective service, whether the caseworker's investigation followed the procedures delineated by law, and whether the statements made by the child were likely to be the result of coaching by a third party or based on fantasy. *Id.*

 Here, A.M.'s statements clearly and consistently identified her father as the perpetrator. These statements were first made to a professional caseworker within hours after A.M. was released from the emergency room and again during the course of the investigation, which support their reliability along with the medical evidence and the fact that A.M.'s father had access to her at the time of her abuse.[3] In the absence of evidence indicating that there was insufficient indicia of reliability and in accordance with the guidelines set forth in *A.Y.*, substantial evidence exists to support OHA's finding that A.M.'s injuries were caused by R.S.M., her father. The Court rejects any claims by the father that proper protocol was not followed in this case. Accordingly, the final order of the Department of Public Welfare, Office of Hearings and Appeals is affirmed.

### ORDER

AND NOW, this 11th day of February, 1997, the order of the Department of Public Welfare, Office of Hearings and Appeals is affirmed.

---

**3.** The attorney examiner found that the father's allegations that Officer Diehl subjected A.M. to suggestive questioning to be unpersuasive and not supported by the record. In any event, an adverse inference may not be drawn as a result of CYS' decision not to call Officer Diehl as a witness where he could have been called by the father. *See B.G. v. Department of Public Welfare,* 132 Pa.Cmwlth. 563, 573 A.2d 672 (1990).