v.

**DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 16, 1997.

Decided July 2, 1997.

---

Jan Ira Medoff, Pittsburgh, for petitioner.

Jeffrey P. Schmoyer, Assistant Counsel, Harrisburg, for respondent.

Before COLINS, President Judge, and McGINLEY, J., and LORD, Senior Judge.

LORD, Senior Judge.

█ A.P. files a petition for review of an order of the Pennsylvania Department of Public Welfare, Office of Hearings and Appeals (OHA), which adopted a hearing officer's recommendation to deny A.P.'s request to expunge an indicated report of child abuse naming him as perpetrator. *See* the Child Protective Services Law (CPSL), Act of December 19, 1990, P.L. 1240, *as amended*, 23 Pa.C.S. §§ 6301–6385.

The following facts were found by the hearing officer and adopted by OHA. J.L. is a female child born in 1986. In 1987, her mother, T.P., married A.P., who is not J.L.'s biological father, and lived with him, J.L. and two other children continuously during the relevant time period. While being bathed by her mother on or about March 1, 1991, J.L., then four years old, would not let T.P. wash between her legs, telling her mother that J.L.'s cousin, A., who was four years older, "touched her down there." T.P. took J.L. to Washington County Children and Youth Services (CYS) on March 21, 1991 and J.L. was subsequently transported to a hospital emer-

gency room, where she was examined by Dr. Jan Hecker.

Dr. Hecker's emergency room record indicated that, when asked if anyone hurt her, J.L. stated "yes, '[A.] put a shooter in my privates.'" That record stated that, when asked if anyone else hurt her, J.L. "paused, shook her head no and then said 'yes, daddy put his fingers in my privates.'" Dr. Hecker reported that J.L. was unable to state specifically when this happened, but that J.L. related it occurred at home when her mother was at work. Dr. Hecker further wrote that, when asked if her father had done this prior to what A. had done, J.L. said "yes," and that sexual abuse by the father occurred on multiple occasions. According to the report, when asked to demonstrate, J.L. readily spread her legs and pointed to her vagina, and when asked if the father put his fingers anywhere else, the child "pointed to the rectum."

Dr. Hecker's report continued that his medical examination of J.L. revealed "[t]he introitus is gaping and the hymen is perforated and gaping." The report stated that the "history and physical exam is consistent with penetration of the vagina with an object of some type." Dr. Hecker wrote that J.L. willingly volunteered that she was afraid her mother was mad at her, and that he was concerned that T.P. had attempted to get J.L. "to change her story."

In July 1991, J.L. was evaluated by a psychologist, Dr. Anthony P. Mannarino. His report stated that J.L was in foster care, placed there because her mother did not believe her and could not protect her. Dr. Mannarino's report indicated that J.L. was accompanied by her foster father and a CYS caseworker. According to the report, J.L. related that she was in a foster home because her stepfather had touched the private parts of her body. She suggested that her stepfather touched her many times at the family residence, typically while the mother was working. The report further indicated J.L. "specifically stated that the stepfather touched her vaginal area and digitally penetrated her ... [and] claimed that she had made a 'mistake' when she told the judge that her stepfather had not touched her when in fact he really had." When asked about other possible perpetrators, J.L. stated that A. "'stuck her fingers in my privates.'" Dr. Mannarino wrote that the information provided was consistent with previous interviews and there was no indication J.L. had been coached or influenced. He noted serious concerns that J.L. might later recant the allegations because of lack of emotional support from her mother.

By court order J.L. was returned to her mother in July 1991. Vickie Amos, a CYS caseworker, wrote a report that J.L. demonstrated the sexual abuse verbally and with anatomically correct dolls. Amos filed a child abuse report. It is stipulated that J.L. has recanted the allegations that A.P. sexually abused her.

An indicated report of child abuse of J.L. by A.P. was filed on May 8, 1995.[1] A.P. requested his name be expunged from the Statewide register of child abuse, which consists of indicated reports.[2] That request was denied and A.P. then appealed to the hearing officer.

At the hearing, CYS presented the reports of Drs. Hecker and Mannarino and rested its case. A.P. and T.P. testified. A.P. filed a "motion to dismiss," asserting that his appeal should be granted because CYS presented no witnesses and therefore was unable to proceed with its case. The hearing officer denied the motion, determining that the entire record including the medical reports, which counsel for A.P. agreed to be presented as evidence without hearsay objection, constitut-

---

**1.** *Indicated report is defined in Section 6303(a) of the CPSL as*

[a] child abuse report made pursuant to this chapter if an investigation by the county agency or the Department of Public Welfare determines that substantial evidence of the alleged abuse exists based on any of the following:

(1) Available medical evidence.

(2) The child protective service investigation.

(3) An admission of the acts of abuse by the perpetrator.

23 Pa.C.S. § 6303(a).

**2.** *See* Sections 6331(2) and 6338(a) of the CPSL, 23 Pa.C.S. §§ 6331(2), 6338(a).

ed sufficient evidence for a hearing.[3]

The hearing officer next concluded that A.P.'s request for expungement should be denied, relying on the reports of Drs. Hecker and Mannarino, crediting the statements attributed to J.L., and affording no weight to T.P.'s testimony.[4] The hearing officer stated in part:

> There is remarkable consistency between the hearsay statements attributed to the subject child, thus making it difficult ... to believe that the subject child was making a false allegation against the appellant.

> . . . .

> It is the opinion of this Hearing Officer that the child has recanted the allegations to please the mother. Given all of these elements, it is clear that the alleged perpetrator in this matter is indeed the person responsible for the abuse that occurred and that the appeal should be denied and the record remain unexpunged.

(Hearing officer's decision, pp. 6–7). That recommendation was adopted by the OHA order that A.P. now appeals.

■ Our scope of review is limited to determining whether constitutional rights have been violated, whether an error of law has been committed and whether the findings of fact were supported by substantial evidence. *B.E. v. Department of Public Welfare,* 654 A.2d 290 (Pa.Cmwlth.1995).

A.P. contends in this appeal that the hearing officer erred because (1) CYS did not show abuse by A.P. by substantial evidence and thus did not sustain its burden of proof; (2) the motion to dismiss should have been granted where CYS presented no witnesses at the hearing and could not proceed; and (3) CYS' hearsay objections were improperly sustained to testimony from T.P. and A.P. that J.L. had repeatedly told them she had lied about the identity of the perpetrator.[5]

We agree that this appeal has merit and that OHA's order must be reversed.

■ It must be recognized at the outset that cases such as this present special concerns, none more important than the welfare of the children involved. In considering the differing concerns, our Supreme Court in *A.Y. v. Department of Public Welfare,* 537 Pa. 116, 641 A.2d 1148 (1994) essentially provided for relaxed rules of admission of hearsay evidence in child abuse cases, without rejecting the tenet that, except in limited circumstances, hearsay evidence, even if admissible and not objected to, does not alone constitute substantial evidence. It set forth the following evidentiary guidelines, which are directly pertinent in this case

> 1. Hearsay testimony of a child victim will be admitted in accordance with the standards set forth in 42 Pa.C.S. § 5986,[6] and this rule shall be applied to permit the testimony of the victim's parents and other family members as well as those professionals charged with investigating incidents of child abuse;

---

3. CYS' counsel asserted at the hearing that he was preparing to depose Drs. Hecker and Mannarino; without dispute by A.P.'s counsel, he also stated that A.P.'s counsel had agreed "the scope of their testimony was going to be the reports in this case" and that A.P.'s counsel would withdraw his hearsay objection, while maintaining the motion to dismiss, if CYS "agrees to rest its case on two reports to be submitted today." (Notes of hearing, October 20, 1995, p. 7).

4. The hearing officer reasoned that T.P. testified she did not hear J.L. accuse A.P. of abuse, but that on cross-examination T.P. admitted she told the doctor at the emergency room she was told by J.L. that A.P. was touching her. (Notes of hearing, October 20, 1995, pp. 18, 30–31).

5. A.P. also notes that T.P. testified without objection that she heard J.L. approximately twenty five times in the previous four years say that J.L's cousin abused her. (Notes of hearing, October 20, 1995, p. 29).

6. The Supreme Court referred to this statutory provision, which has since been amended:

> A statement made by a child describing acts and attempted acts of indecent contact, sexual intercourse or deviate sexual intercourse performed with or on the child by another, not otherwise admissible in evidence in a dependency proceeding initiated under Chapter 63 (relating to juvenile matters), involving that child or other members of that child's family, if a court finds that the time, content and circumstances of this statement provide sufficient indicia of reliability.

*A.Y.,* 537 Pa. at 123, 641 A.2d at 1151.

2. Hearsay testimony in conjunction with admissible corroborative evidence of the act(s) in question can *in toto* constitute substantial evidence which will satisfy the Agency's burden to justify a conclusion of abuse.

3. However, *uncorroborated* hearsay cannot satisfy the Agency's burden unless it comports with the following requirements:

(a) the statement was accurately recorded by audio or video equipment;

(b) the audio-visual record discloses the identity and at all times included the images and/or voices of all individuals present during the interview of the minor; and

(c) the statement was not made in response to questioning calculated to lead the minor to make a particular statement and was not the product of improper suggestion.

*A.Y.*, 537 Pa. at 125–126, 641 A.2d at 1153 (emphasis in original).

This standard must be carefully considered in the context of the evidence at A.P.'s expungement hearing and the undisputed fact that CYS had the burden of proof at that hearing, as is expressly provided in Section 6341(c) of the CPSL, 23 Pa.C.S. § 6341(c). Here, CYS introduced evidence of accusations of abuse against both J.L.'s cousin and A.P., and it is stipulated that only the accusations against A.P. were recanted. We are not asked to hold that no sexual abuse occurred as to J.L., but are strictly limited to evaluating whether substantial evidence shows A.P. to be the perpetrator, as the hearing officer and OHA found.

The only evidence CYS presented on this issue were the reports of Drs. Hecker and Mannarino. On the question of the perpetrator of abuse against J.L., the statements and opinions in these reports were obviously hearsay and, indeed, often double hearsay.[7] In turn, the hearing officer's findings, premised on such evidence, were in relevant part dependent on hearsay.

■ These circumstances are not altered by the fact that A.P.'s counsel agreed not to pursue a hearsay objection. It remains true that in this record there is only hearsay—not corroborated by non-hearsay evidence—on the crucial issue of whether A.P. was the perpetrator of child abuse. As the Supreme Court has specifically held in *A.Y.*, uncorroborated hearsay cannot satisfy CYS' burden unless it comports with several requirements—including the recording of statements with audio or video equipment—that were not met here.

■ We reiterate that the *A.Y.* standard provides for relaxed rules on the *admission* of evidence, but also shows that the necessity for corroboration continues. We have held that under *A.Y.* hearsay does not constitute independent corroborative evidence of hearsay. *York County Children and Youth Services v. Department of Public Welfare*, 668 A.2d 185 (Pa.Cmwlth.1995). In *York County*, we sustained an expungement of two indicated reports of child sexual abuse. We searched for admissible corroborative evidence of a child's out-of-court statements, and determined that a witness' testimony merely recounting the child's out-of-court statements did not constitute independent corroborative evidence of those statements. *Id.*

We do note that this Court did discern the existence of the requisite corroborative evidence to hearsay in sustaining the denial of expungements in *B.E.* and *S.T. v. Department of Public Welfare*, 681 A.2d 853 (Pa. Cmwlth.1996), *petition for allowance of appeal denied*, 547 Pa. 747, 690 A.2d 1165 (1997). However, medical evidence of abuse in those cases, determined not to be hearsay and to be corroborative of abuse, was sufficient to end the inquiry presented therein. This case, by contrast, involves a situation where a child has named two perpetrators and has recanted as to one. Thus, a medical conclusion of abuse is not dispositive here, as it was in those two cases. J.L.'s account of exactly who abused her is crucial.

---

7. T.P.'s testimony that she initially told a doctor she was told by J.L. that A.P. was touching her was hearsay as well.

In sum, while there is apparently sufficient evidence under *A.Y., B.E.* and *S.T.* to support a finding that J.L. was abused by someone, unlike in those cases we are presented here with the remaining possibility that the abuse was perpetrated solely by A., and there is only hearsay evidence to support the pertinent finding that A.P. was in fact the perpetrator. We hold in this instance, similar to our reasoning in *York County,* that the *A.Y.* standard does not allow as sufficient evidence hearsay standing alone such as out-of-court statements relating and interpreting a child's out-of-court statements on the identity of a perpetrator. Indeed, while relying on the written statements of Drs. Hecker and Mannarino, the hearing officer did not allow the witnesses who were present at the hearing, A.P. and T.P., to testify to what J.L. subsequently said about whether A.P. was the perpetrator.

Under the specific circumstances here, we conclude that the evidence presented on whether A.P. was the perpetrator of child abuse was entirely hearsay and thus simply not enough for CYS to sustain its burden of proof at the expungement hearing.[8]

Accordingly, the order in this matter is reversed and this case is remanded for appropriate action to grant the expungement relief A.P. has requested.

### ORDER

AND NOW, this 2nd day of July, 1997, the order of the Office of Hearings and Appeals of the Pennsylvania Department of Public Welfare, No. 21–95–100, dated August 28, 1996, is hereby reversed and this case is remanded to the Office of Hearings and Appeals for appropriate action to grant the

expungement relief sought by Petitioner in this matter.

Jurisdiction relinquished.

---

8. We emphasize that we are concluding only that CYS did not meet its burden of proof, which it is required by statute to carry. This Court is not finding that A. alone, and not A.P., abused J.L., that J.L. lied when she initially accused A.P., or that J.L. was telling the truth when she later recanted. A.P. points to evidence in the medical reports such as the accusation against A., notes that criminal charges against A.P. were dropped, dismisses other evidence as not credible and submits there are "so many contradictions and lies in the evidence that the agency could not meet its burden of proof." (Petitioner's brief, p. 12). These specific claims amount to an attempt by A.P. to advance his own version of the facts, which we must reject given our scope of review and OHA's role to find the facts and resolve evidentiary conflicts based on substantial evidence. *R. v. Department of Welfare,* 535 Pa. 440, 636 A.2d 142 (1994); *B.E.; Bucks County Children and Youth Social Services Agency v. Department of Public Welfare,* 151 Pa.Cmwlth. 110, 616 A.2d 170 (1992).