**Katrissa HILL, Petitioner,**

**v.**

**PENNSYLVANIA DEPARTMENT OF HEALTH, DIVISION OF NURSING CARE FACILITIES, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 13, 1998.

Decided May 6, 1998.

Anthony L. Cianfrani, Philadelphia, for petitioner.

Carol Somerset-Griffie, Harrisburg, for respondent.

Before COLINS, President Judge, SMITH, J., and LORD, Senior Judge.

LORD, Senior Judge.

Katrissa Hill petitions for review of a Department of Health (Department) adjudication denying her exceptions to a hearing officer's proposed report in which it was found that Hill engaged in physical abuse of a nursing home resident. The Department's adjudication directed that a notation of the incident be included in the Department's Nurse Aide Registry.

On June 10, 1995, Hill, a certified nurse at Rittenhouse Care Center, was accused of abusing an eighty-nine year old resident, Marion Gundlach. Hill was eventually terminated as a result. In November of 1995, the Department issued a rule to show cause why a notation of abuse should not appear on the Department maintained registry. Hill requested a hearing, which was held on January 19, 1996 before a Department hearing officer. At that hearing, testimony was given by the charge nurse on duty at the time, the wound care nurse, a nurse supervisor, the director of social services, the facility administrator, Hill, Hill's mother, who also worked at the facility, and a co-worker.

Bridget Flynn, the wound care nurse, testified that she heard loud cries coming from Gundlach's room approximately twenty feet from where she was standing at the nursing station. Flynn testified she entered the room and saw Hill and Gundlach, who was in her wheelchair holding her face with one

hand and slapping Hill with the other. Flynn testified she heard Gundlach saying "She hit me, she hit me. Why do you keep girls like this here, she hit me." Flynn testified that Gundlach's glasses were folded on the nearby overbed table. Flynn testified that Gundlach had an abrasion on her cheek that was oozing blood. A photograph of Gundlach taken shortly after the incident was introduced into evidence. It showed bruises around Gundlach's eye and the bridge of her nose as well as the abrasion on her cheek.

Hill testified that Gundlach had on that day pushed away food Hill attempted to give her, that Gundlach grabbed the back of her uniform and then tried to grab her face as she turned toward her and that she, Hill, pulled Gundlach's hands down, away from her face. Hill testified it was Gundlach's fingernail that caused the scratch; she also testified that Gundlach was wearing glasses, but they fell off her face onto the floor when Hill pulled her hands down. Hill testified that Gundlach's skin is, at her age, extremely fragile.

On consideration of this and the additional evidence, including testimony from other facility personnel about immediately ensuing events and nursing notes taken at the time, the hearing officer issued a proposed report suggesting that a notation of abuse be placed next to Hill's name in the Nurse Aide Registry. Exceptions were filed by Hill and briefs were submitted by both Hill and the Department. James W. Jordan, Jr., Deputy Secretary for Health Assessment, designated by the Department Secretary as agency head for the purpose of issuing an adjudication, made additional findings of fact, denied Hill's exceptions to the proposed report and ordered a notation of abuse. Hill now petitions this Court for review of that adjudication.

Hill contends that the findings of fact contained in the adjudication are not supported by substantial evidence. She argues that the hearsay statement of Gundlach that "she hit me," which was admitted over objection as an excited utterance, was inherently unreliable due to Gundlach's mental incapacity. The Secretary's designee therefore erred in basing his findings on such hearsay.

■ Hill correctly points out that the basis for admitting hearsay statements under the "excited utterance" exception is that such spontaneous statements, made close in time to an emotional event, are free from premeditation and design and are therefore inherently reliable. *Carney v. Pennsylvania Railroad Company*, 428 Pa. 489, 240 A.2d 71 (1968). Hill argues that the premise for admissibility is undermined when the declarant lacks mental capacity. In such a case, statements are inherently unreliable regardless of how spontaneous or close to an event they are made. Here, Hill argues, Gundlach's statements should not have been admitted as an excited utterance. Hill points to a December 5, 1994 doctor's report of consultation on Gundlach, which was admitted into evidence and indicates a diagnosis of "dementia with delusions."

■ Notwithstanding diminished mental capacity, it is generally presumed that a witness is competent, and the burden of proving incompetency to testify is on the party asserting incompetency of the witness. *Commonwealth v. Ware*, 459 Pa. 334, 329 A.2d 258 (1974). The competency of hearsay declarants is governed by the rules of testimonial capacity. *Id.* Apart from the doctor's report, Hill offered no evidence that Gundlach was *incapable* of giving a correct account of the incident at the time. The hearing officer had before her the doctor's report, which also indicated Gundlach was not "perturbed by any thinking disorder." She also had the facility's quarterly patient capacity assessments, and was able to make her own judgment of the Gundlach's testimonial capacity and the weight to be accorded her statements. We have long held that Commonwealth agencies are not bound by technical rules of evidence in administrative proceedings such as this, and all relevant evidence of reasonably probative value may be received. Section 505 of the Administrative Agency Law, 2 Pa.C.S. § 505. *A.Y. v. Department of Public Welfare*, 537 Pa. 116, 641 A.2d 1148 (1994). One reason for this principle is that the risk that a fact-finder would be misled or unduly influenced by an unreliable statement made by a declarant is minimized in administrative hearings. We con-

clude that it was not an abuse of discretion or error of law to have admitted this statement, since Hill did not show Gundlach was unable at the time to give an accurate account of the events that transpired. Since it was corroborated by other testimony, the hearsay statement may form the basis for findings of fact. *Id.*[1]

 Hill also takes exception to several of the Deputy Secretary's findings of fact. We agree with Hill that there is no support for the Deputy Secretary's finding that someone placed Gundlach's eyeglasses on her overbed table *before* the incident, in that there is no eyewitness who gave such an account and the circumstantial evidence leads equally to the inference that they were placed there during the incident, as Hill testified. We also agree that there is no support for his finding that Gundlach was not wearing her eyeglasses as the time of the incident. It does not necessarily follow from the charge nurse's testimony that Gundlach was not wearing her glasses in the hallway at 12:30 a.m. that she was not wearing them 15 to 20 minutes later in her room, at the time of the incident. Again, there was no eyewitness, other than Hill, who testified. Finally, Hill argues the record does not support the Deputy Secretary's finding that she offered no explanation for Gundlach's facial injuries. While Hill testified that Gundlach cheek wound was caused by Gundlach's own fingernail, she did not explain how Gundlach came to receive extensive bruises about the eye and nose, if her glasses had simply fallen or were knocked off when Hill pulled Gundlach's hands down, as Hill testified. Nonetheless, these findings individually or cumulatively are not critical to a determination here.

The hearing examiner, in her proposed report, found Hill's testimony not credible and stated her reason for finding it so. She also found that Hill retaliated against Gundlach when she tried to grab Hill. The hearing examiner then concluded that Hill's actions constituted abuse as that term is defined in the governing Code of Federal Regulations, 42 C.F.R. § 488.301, "the willful infliction of injury, unreasonable confinement, intimidation or punishment with resulting physical harm, pain or mental anguish." Having reviewed the record in its entirety, we can say that, though it is to a large degree contradicted, the evidence amply supports the hearing examiner's findings. Given our scope of review, which is limited to determining whether constitutional rights have been violated, whether an error of law has occurred and whether findings of fact are supported by substantial evidence, *B.E. v. Department of Public Welfare*, 654 A.2d 290 (Pa.Cmwlth.1995), we have no basis on which to disturb the Department's adjudication.

### ORDER

AND NOW, this 6th day of May, 1998, the adjudication of the Department of Health, dated October 17, 1997, at No. APP.97–001, is hereby affirmed.

---

1. It remains the law today, of course, that even unobjected to hearsay is not sufficient to support a finding of fact unless it is corroborated by competent evidence. *A.Y.*