v.

**DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 13, 2012.
Decided Sept. 12, 2012.

DEP4245.pdf.

Allison Bell Royer, Media, for petitioner.

Mary P. Patterson, Senior Counsel, Harrisburg, for respondent.

BEFORE: PELLEGRINI, President Judge, and LEAVITT, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Senior Judge FRIEDMAN.

J.M. (Father) petitions for review of the December 8, 2011, final order of the Secretary of the Department of Public Welfare (DPW), which upheld the July 22, 2011, order of the DPW's Bureau of Hearings and Appeals (BHA). The BHA adopted the recommendation of the Administrative Law Judge (ALJ) dismissing Father's administrative appeal to expunge the indicated report of sexual abuse of his daughter, I.M. (Child). We reverse.

On April 18, 2009, a caseworker from the Philadelphia Department of Human Services (DHS) received an oral report from Childline that Father had allegedly placed his finger in the vagina of Child while he was bathing her during a visit at his home.[1] (ALJ's Findings of Fact, Nos. 3–4.) Child was three years old and resided with C.Z. (Mother), at the time of the incident.[2] (ALJ's Findings of Fact, Nos. 1–2.)

---

1. County exhibit number 3 lists April 23, 2009, as the date the incident was reported, not April 18, 2009, as the ALJ finds. (ALJ's Findings of Fact, No. 4; Ex. C–3, at 1.)

2. The ALJ found that Child resided with Mother at the time of the alleged incident; however, Mother's testimony reveals that, at the time of the alleged incident, Father and

Mother reported that Child "touched a female playmate's pee-pee" while the girl was visiting their home. (ALJ's Findings of Fact, No. 13.) Child disclosed to Mother that Father "had placed his finger in her vagina while he was washing her there." [3] (ALJ's Findings of Fact, Nos. 14–15.) At the time of the incident, Child washed her vaginal area by herself and did not need the help of an adult. (ALJ's Findings of Fact, No. 18.)

DHS initiated an investigation of suspected child abuse and, on or before May 24, 2009, a forensic interviewer interviewed Child at the Philadelphia Children's Alliance (PCA). (ALJ's Findings of Fact, Nos. 5–6.) The interview of Child was recorded using audio and video equipment (DVD) and shows all individuals present during the interview.[4] (ALJ's Findings of Fact, Nos. 7–8.) The investigation revealed that Father "placed his moving finger in the vagina of . . . [C]hild" and "[i]t hurt a lot." [5] (ALJ's Findings of Fact, Nos. 10–11; Ex. C–4, DVD.)

On May 27, 2009, Philadelphia County Children and Youth Services (CYS) filed an indicated report of sexual abuse against Father. (ALJ's Findings of Fact, No. 19.) On June 15, 2009, Father appealed, requesting expunction of his name from the Childline registry. (ALJ's Findings of Fact, No. 20.)

■ On February 8, 2010, a hearing was held before the ALJ, who found the testimony of DHS' witnesses credible and Father's testimony of how he washed the vagina of Child with a washcloth not credible. (ALJ's Findings of Fact, Nos. 21–22.) The ALJ excused Child from testifying at the hearing because she "was suffering from serious emotional distress and could not reasonably communicate with the Court." (ALJ's Findings of Fact, No. 23.) The ALJ further found that the statements made by Child in the DVD were not made in response to questioning calculated to lead the minor to make particular statements and was not the product of improper suggestion. (ALJ's Findings of Fact, No. 9.) The ALJ recommended that Father's appeal be denied. BHA ordered that the ALJ's recommendation be adopted and the Secretary of DPW upheld BHA's decision. Father now petitions this court for review.[6]

---

Mother had shared joint custody of Child, with Child alternating weeks with each parent. (N.T., 2/8/10, at 96.)

3. The ALJ found that Child disclosed to Mother that Father "had placed his finger in her vagina while he was washing her there" and cites to the notes of testimony at page 97. The only testimony as to what Child said to Mother when she spoke with Child about why Child touched the playmate is in the notes of testimony at page 98, wherein Mother stated that Child told her that "[m]y dad touched my pee-pee." (N.T., 2/8/10, at 98.)

4. We note that there is no testimony on record of when the interview was recorded. DHS's Investigation Summary contains a note that, on May 12, 2009, a visit occurred with "Mother, [Child], PCA." (Ex. C–2, at 1.) This is the only mention in the record of a date that Child may have been interviewed at PCA, and there is no mention in county exhibit number 2 of a DVD being made that day.

5. We note that Child reported to her mother that Father touched her "pee-pee" and Mother refers to her "pee-pee," but, throughout the DVD, Child refers to her "vagina." (N.T., 2/8/10, at 98; Ex. C–4, DVD.)

6. Our scope of review is limited to determining whether constitutional rights have been violated, whether the adjudication is in accordance with the law and whether the necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704. In determining whether there is substantial evidence, we give the prevailing party the benefit of all reasonable and logical inferences drawn from the evidence; however, the weight and credi-

■ Initially, Father contends that DPW abused its discretion and erred as a matter of law in dismissing Father's appeal and admitting, over objection, the DVD, which was videotaped hearsay testimony of Child, without corroboration or any testimony as to the date and time of the DVD interview.

■ The burden of proof in an expunction hearing is on DHS to show by substantial evidence that the indicated report is accurate. *Bucks County Children and Youth Social Services Agency v. Department of Public Welfare*, 808 A.2d 990, 993 (Pa.Cmwlth.2002). A child protective services agency will file an indicated report if the investigation by the agency determines that there is substantial evidence of the alleged abuse based upon available medical evidence, the investigation by the child protective services agency, or the admission of the acts of abuse by the perpetrator. Section 6303 of the Child Protective Services Law, 23 Pa.C.S. § 6303. In this matter, there was no medical evidence that indicated abuse and the alleged perpetrator denied the act; therefore, the only support of the indicated report is the child protective services investigation.

DPW relies upon the hearsay statement of Child to support its indicated finding.[7] Section 5986 of the Judicial Code creates an exception to the hearsay rule for statements made by a child describing acts of sexual abuse. Section 5986 provides:

(a) General rule.—A statement made by a child describing· acts and attempted acts of indecent ·contact, sexual intercourse or deviate sexual intercourse performed with or on the child by another, not otherwise admissible by statute or court ruling, is admissible in evidence in a dependency proceeding initiated under Chapter 63 (relating to juvenile matters), involving that child or other members of that child's family, if:

(1) the court finds, in an in camera hearing, that the evidence is relevant and that the time, content and circumstances of the statement provide sufficient indicia of reliability; and

(2) the child either:

(i) testifies at the proceeding; or

(ii) is found by the court to be unavailable as a witness.

(b) Emotional distress.-In order to make a finding under subsection (a)(2)(ii) that the child is unavailable as a witness, the court must determine, based on evidence presented to it, that testimony by the child as a witness will result in the child suffering serious emotional distress that would substantially impair the child's ability to reasonably communicate. In making this determination, the court may do all of the following:

---

bility of the evidence is solely within the discretion of the BHA as factfinder. *R.A. v. Department of Public Welfare*, 41 A.3d 131, 136 n. 7 (Pa.Cmwlth.2012).

We˙note that this court in *G.V. v. Department of Public Welfare*, 52 A.3d 434, 446, 2012 WL 2849501 (Pa.Cmwlth.2012) recently determined that "substantial evidence must support a determination of whether child abuse has occurred, but there must be clear and convincing evidence of child abuse to maintain statutorily-designated information from an indicated report on the ChildLine

Registry." Here, because the DPW did not present substantial evidence to support an indicated report of child abuse, our inquiry ends.

7. In this case, DHS's only evidence of abuse was the DVD of Child's interview. The testimony of the DHS investigative worker was double hearsay. *See R.A.*, 41 A.3d at 140. DHS did not investigate Father's background, character, reputation or family, and the results of Child's physical exam at Children's Hospital were normal and did not show any signs of abuse. *See id.* at 141.

(1) Observe and question the child, either inside or outside the courtroom.

(2) Hear testimony of a parent or custodian or any other person, such as a person who has dealt with the child in a medical or therapeutic setting.

(c) Counsel and confrontation.-If the court hears testimony in connection with making a finding under subsection (a)(2)(ii), all of the following apply:

(1) Except as provided in paragraph (2), the defendant, the attorney for the defendant and the attorney for the Commonwealth have the right to be present.

(2) If the court observes or questions the child, the court shall not permit the defendant to be present.

42 Pa.C.S. § 5986.

In *A.Y. v. Department of Public Welfare*, 537 Pa. 116, 641 A.2d 1148 (1994), our Supreme Court determined that an out-of-court videotaped interview of a child victim of sexual assault was admissible in an expungement case as long as the provisions in Section 5986 of the Judicial Code are satisfied. The Supreme Court set forth the following guidelines for admitting hearsay evidence and determining what constitutes substantial evidence:

1. Hearsay testimony of a child victim will be admitted in accordance with the standards set forth in 42 Pa.C.S. § 5986, and this rule shall be applied to permit the testimony of the victim's parents and other family members as well as those professionals charged with investigating incidents of child abuse;

2. Hearsay testimony in conjunction with admissible corroborative evidence of the act(s) in question can *in toto* constitute substantial evidence which

will satisfy the Agency's burden to justify a conclusion of abuse.

3. However, *uncorroborated* hearsay cannot satisfy the Agency's burden unless it comports with the following requirements:

a) the statement was accurately recorded by audio or video equipment;

b) the audio-visual record discloses the identity and at all times included the images and/or voices of all individuals present during the interview of the minor; and

c) the statement was not made in response to questioning calculated to lead the minor to make a particular statement and was not the product of improper suggestion.

*Id.* at 126, 641 A.2d at 1153.[8]

In *R.A. v. Department of Public Welfare*, 41 A.3d 131, 140 (Pa.Cmwlth.2012), we determined that "testimony from persons whose only experience with Daughter was attendance at the interview is not corroboration." Any testimony "about what Daughter said at her interview is double hearsay that was redundant, not corroborative, of the ... DVD. Hearsay can not constitute independent corroborative evidence of hearsay." *Id.* This court further stated that "county agencies routinely offer corroborating evidence" and set forth examples of corroborating testimony from emergency room physicians, physicians with expertise in sexually abused children, child psychiatrists, and medical doctors. *Id.* We explained:

Where the hearsay statement is that of a very young child, corroboration is needed to find that a perpetrator engaged in sexual intercourse, cunnilingus and digital penetration of the child, as

8. We note that even though *A.Y.* was decided using former section 5986 of the Judicial Code, the guidelines still apply because "[t]he guidelines do not spell out the terms of former Section 5986 and do not state that only those specific terms must be used to evaluate child hearsay." *D.P. v. Department of Public Welfare*, 733 A.2d 661, 665 (Pa.Cmwlth.1999).

was reported here.... A medical examination to confirm vaginal penetration and an investigation of Daughter's living situation ... to consider what other persons had an opportunity to abuse Daughter in the past, should have been undertaken. This is not the exceptional case where uncorroborated hearsay alone may be sufficient to justify a finding of abuse.

*Id.* at 141. In R.A., the county agency "did not investigate Father's background, character, reputation or family or offer any evidence such as a physical exam or evaluation of a physician or psychologist to corroborate the ... DVD hearsay statement." *Id.*

In the present case, Child's statement on the DVD is hearsay evidence, and Child did not testify at the hearing regarding the abuse or the DVD. In order to determine that Child was unavailable as a witness, the ALJ, pursuant to section 5986 of the Judicial Code, chose to observe Child in the courtroom. However, section 5986 requires that "[i]f the court observes or questions the child, the court *shall not* permit the defendant to be present." 42 Pa.C.S. § 5986(c)(2) (emphasis added). In the present controversy, Father, the defendant, was present during the court's observance and questioning, even after

Child stated that she would feel better if Father was not in the courtroom. (N.T., 2/8/10, at 38.) Therefore, the ALJ did not meet the requirements of section 5986 in determining that Child was unavailable as a witness.[9]

■ Further, assuming unavailability, the ALJ erred in determining that the time, content, and circumstances of the DVD provided sufficient indicia of reliability. The record reveals that the DVD was never authenticated at the hearing before the ALJ. DHS failed to present any evidence of when the DVD was made. DHS refers the ALJ to its investigative summary, which contains a note that on May 12, 2009, a visit occurred with "Mother, [Child], PCA," (Ex. C–2, at 1.); however, there is no mention of a DVD being made that day. Nothing in the record supports DHS's assertion that the DVD was made on that date. Absent authentication, we are unable to find sufficient indicia of reliability of the DVD.[10]

Finally, a review of the ALJ's decision reveals that it was not supported by substantial evidence because there were too many inconsistencies between the evidence and testimony presented and the ALJ's findings and conclusions.[11]

---

9. Also, there is no proof that the child would have suffered "serious emotional distress that would substantially impair the child's ability to reasonably communicate." 42 Pa.C.S. § 5986(b). The ALJ even stated that Child could "just not be able to testify because she's not able to recollect, which is independent of any kind of emotional distress. I mean, three and a half, four years old, there's very few children, at four years old, that can recollect...." (N.T., 2/8/10, at 31.)

10. Further, the ALJ should have considered more of the circumstances surrounding the child abuse reporting, *i.e.*, the highly contested custody hearing, which was scheduled for three days after Mother reported the incident, the fact that Mother had been denied a con-

tinuance, and the fact that Child, who was three years old, used the term "vagina" during the DVD interview after Mother testified that Child used the term "pee-pee."

11. The ALJ erred in finding that the date the incident was reported was April 18, 2009. (*See* ALJ's Findings of Fact, No. 4; Ex. C–3, at 1.) The ALJ erred in finding that Child resided with Mother at the time of the incident, when Mother testified that custody of Child was fifty-fifty at the time of the incident. (ALJ's Findings of Fact, No. 2; N.T., 2/8/10, at 108). The ALJ further erred in finding that Child disclosed to Mother that Father "had placed his finger in her vagina while he was washing her there," citing to the notes of testimony at page 97, when the only testimo-

We find that the Secretary of the DPW erred in upholding the order of the DPW dismissing Father's administrative appeal to expunge the indicated report of sexual abuse of Child, his daughter. Accordingly, we reverse.[12]

### ORDER

AND NOW, this 12th day of September, 2012, the December 8, 2011, order of the Secretary of the Department of Public Welfare is reversed.

ny as to what Child disclosed to Mother was at page 98, where Mother stated that Child told her that "[m]y dad touched my pee-pee." (N.T., 2/8/10, at 98.) The ALJ also determined that "during therapeutic sessions, the subject child would sexually act out by rubbing the male Barbie doll against the privates of the female Barbie doll." (ALJ decision at 17.) However, Mother testified only that she noticed "inappropriate play with the dolls or Barbie's ... male Barbie rubbing against fe-

male Barbie" and that a counselor suggested to her "that if the Barbie's [sic] couldn't act appropriate to one another, then one would have to go away." (N.T., 2/8/10, at 101.) There was no testimony that this happened during therapeutic sessions.

12. In light of this disposition, we need not address Father's remaining issues.