v.

Commonwealth of Pennsylvania, Department of Public Welfare and Wyoming County Human Services, Intervenor, Appellants.

Supreme Court of Pennsylvania.

Argued May 8, 2013.

Decided Nov. 20, 2013.

148

Sandra D. Boyle, Esq., Wyoming County Human Services, Inc. (Children & Youth), Nicholson, for Wyoming County Human Services.

Mary Patricia Patterson, Esq., Kenneth J. Serafin, Esq.,Department of Public Welfare, Harrisburg, for Department of Public Welfare.

Brenda M. Kobal, Esq., Kobal & Frederickson, Moosic, for R.A.

CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, JJ.

## *OPINION*

Justice BAER.

The Commonwealth of Pennsylvania, Department of Public Welfare (DPW) and the Wyoming County Human Services (Wyoming Co. CYS)[1] appeal the order of the Commonwealth

---

1. While Wyoming County Human Services is the named party, we will refer to it as the Wyoming County Children and Youth Services (Wyoming Co. CYS or CYS) as has been done in the tribunals below.

Court reversing DPW's Bureau of Hearings and Appeals' order refusing to expunge an indicated report of child sexual abuse relating to a father's alleged abuse of his four-year-old daughter. The questions presented by this case involve the admissibility of a videotape of the daughter's allegations under the relevant hearsay exception for child victims and, if admissible, whether that videotape constitutes the requisite substantial evidence for denying the father's request to expunge. Upon careful review of the record, we conclude that the father in this case waived any challenge to the admissibility of the videotape by failing to object before the Administrative Law Judge (ALJ), both when the father was unrepresented on the first day of the hearing and when he was represented by counsel on the second day of the hearing. Moreover, we reverse the Commonwealth Court's determination that DPW failed to present substantial evidence to support the indicated report of sexual abuse under the Child Protective Services Law, 23 Pa.C.S. §§ 6301–6386.

E.A. was born in January 2005 to Appellee R.A. (Father) and J.A. (Mother).[2] Mother and Father were involved in a brief romantic affair, which quickly transitioned into a highly antagonistic relationship involving contentious custody transfers of E.A. At the time of the events in this case, E.A. lived with Mother in Broome County, New York, but visited Father, who lived in nearby Wyoming County, Pennsylvania, from Friday evening to Sunday evening every other week, certain holidays, and a few non-consecutive weeks in the summers.

Mother alleged that in late June 2009, following a weekend visit with Father, she witnessed E.A. lying on her bed in a dress but without underwear. Mother asserted that E.A. was playing with her dolls with one doll's head "around her vaginal area." Notes of Testimony (N.T.), March 15, 2010, at 42–44, 56–58. When asked what she was doing, Mother averred that E.A. said, "Daddy does it" and that he "puts his butt in my butt." *Id.* at 43, 57, and 111. Soon thereafter, Mother called

2. Mother was sixteen at the time of E.A.'s birth, and Father, apparently, was a few years older. Notes of Testimony (N.T.), March 15, 2010, at 41, 50.

Broome County Children and Youth Services (Broome Co. CYS) which referred the case to Wyoming Co. CYS, given that the alleged sexual assault occurred in Pennsylvania.

In investigating the case, Wyoming Co. CYS asked Broome Co. CYS to interview E.A. An investigator with the New York State Police (Broome Co. Investigator) interviewed E.A. on June 26, 2009, at the Broome County Child Advocacy Center, a few days after Mother observed E.A. on the bed. The Broome Co. Investigator had extensive training in forensic interviewing, especially relating to child sexual abuse, and performed approximately fifty interviews per year. N.T., March 15, 2010, at 30. The interview with E.A. was recorded and simultaneously watched, via closed circuit television, by a Broome County case worker/investigator (Broome Co. Caseworker), who also had substantial training in sexual abuse and forensic interviewing and who had performed thousands of child abuse investigations. N.T., March 15, 2010, at 107–108.

As will be discussed *infra*, the ALJ made the following findings of fact concerning the content of the hour-long videotaped interview:

12. During the interview, E.A. identified both her vaginal area and anal area as her "butt", referring to her vaginal area as her "front butt" and her anal area as her "back butt". (N.T.[, March 15, 2010, at] 24–25, Exhibit E–2)

13. E.A. stated—that her father licked her "front butt" and "back butt", that Appellant placed his fingers in her "butt", that Appellant put his "butt" inside her "butt", and that the aforementioned behavior hurt her vagina, but that E.A. couldn't put a [B]and–[A]id on the injury. (N.T.[, March 15, 2010, at] 27–29, 88–89 Exhibit E–2)

14. During the interview, E.A. identified the Appellant as the perpetrator of sexual abuse on her. (N.T.[, March 15, 2010, at] 88; Exhibit C–1)

DPW Bureau of Hearings and Appeals Adjudication (Adjudication) at 3.[3] Broome Co. CYS forwarded the video and its

3. While the adjudication does not contain page numbers, we will refer to it as if it did.

Caseworker's notes to Wyoming Co. CYS. Upon review of these materials, Wyoming Co. CYS filed an indicated report[4] with the ChildLine and Abuse Registry. Exhibit C–1.

Father appealed to DPW's Bureau of Hearings and Appeals (the Bureau) to expunge the report, and an ALJ presided over a three-day hearing. On the first day of the hearing, on March 15, 2010, Father requested a continuance to allow him to obtain counsel, which was denied based upon the late date of the request.

At the beginning of the hearing on March 15, 2010, Wyoming Co. CYS indicated that E.A. would not testify but that it intended to present her videotaped interview, which all parties acknowledged constituted hearsay. Pursuant to the relevant hearsay exception for child victims, 42 Pa.C.S. § 5986, *infra* at 12 n.10, the ALJ held an *in camera* hearing. N.T., March 15.2010, at 12.[5] Wyoming Co. CYS presented the Broome Co. Investigator, via phone from New York, to testify to the relevance and reliability of the videotaped interview. In response to the ALJ's questions, the Investigator discussed her extensive training in forensic interviewing. The investigator next described the interview process. She related that the interview began with a series of questions to obtain the child's stage of cognitive development and her ability to understand the difference between the truth and a lie. Turning to the heart of the interview, she detailed the allegations summarized above suggesting that Father engaged in cunnilingus, digital

4. As defined by the Child Protective Services Law, an "indicated report" is:

   A child abuse report made pursuant to this chapter if an investigation by the county agency or the Department of Public Welfare determines that substantial evidence of the alleged abuse exists based on any of the following:

   (1) Available medical evidence.
   (2) The child protective service investigation.
   (3) An admission of the acts of abuse by the perpetrator.

   23 Pa.C.S. § 6303.

5. While a portion of the hearing was designated *"in camera,"* it does not appear that any individuals then present, including Father, exited the hearing room when the *in camera* portion began. N.T., March 15.2010, at 12, 39. However, Mother entered the room when called by CYS to testify. *Id.* at 32–33.

penetration, and vaginal intercourse upon E.A. Based upon the interviewer's experience, the interview process, the persons present during the interview, and the proximity of the interview to the alleged abuse, the ALJ found "that the hearsay testimony has, at this point, met the first prong, that it's relevant, reliable and definitely probative in this matter." N.T., March 15, 2010, at 32.

As required by Section 5986, the ALJ observed that CYS next needed to demonstrate that E.A. was unavailable to testify. CYS presented the testimony of Mother who asserted that E.A. "gets very emotional" and that she did not believe E.A. could testify because she refused to speak with the CYS attorney the week before the hearing. *Id.* at 35–37.[6] Based on Mother's testimony, the ALJ found that E.A. was unavailable because she "would have emotional distress or could not reasonably communicate to this court or in this courtroom." *Id.* at 38.

The ALJ then stated, "With that being said, at the appropriate time, I will allow the videotape or the DVD testimony and interview of the child. Any objections?" *Id.* at 39. Father asserted that he did not object. *Id.* The Court continued, "With that being said, the *in camera* is finished" and instructed CYS to call its first witness. *Id.* The ALJ, however, specifically did not admit the videotape during the March 15, 2010, hearing because it could not be viewed due to technical difficulties. *Id.* at 133. As discussed below, it was eventually played during the second day of the hearing on April 20, 2010, and Father, who was then represented by counsel, again did not object to the viewing of the recorded interview. N.T., April 20, 2010, at 9. Moreover, when the ALJ formally admitted the videotaped interview into evidence at

6. Mother's statements regarding E.A.'s unwillingness to speak to the CYS attorney may also be hearsay in that Mother left the room when the CYS attorney began to speak to E.A., because Mother became upset. While E.A. apparently answered introductory questions prior to Mother leaving the room, Mother stated that, after she left, "they did advise me that she didn't speak too much about anything. She just couldn't really." N.T., March 15, 2010, at 37. Regardless, Father, who was not represented, did not object to Mother's statements or challenge whether E.A. was unavailable.

the close of CYS's case, Father's counsel stated "No objection" to the admission of the video. *Id.* at 26. Accordingly, we conclude that Father waived any objections to the admission of the videotaped interview by failing to preserve the issue before the ALJ, and we will not discuss the merits of its admission further.[7, 8] Pa.R.A.P. 302 ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

During the merits portions of the hearing on March 15, April 20, and July 12, 2010, CYS presented the testimony of Mother, the Wyoming Co. CYS Caseworker, the Broome Co. Caseworker who viewed the E.A. interview via closed circuit, and a police officer who was present at several of the custody transfers. Father and his mother testified on Father's behalf.

During the first day of the hearing on March 15, 2010, in addition to setting forth the doll incident described above, Mother testified to the long-standing contentious relationship between Father and her and the difficult custody transfers. During his *pro se* cross-examination, Father attempted to emphasize inconsistencies in Mother's testimony regarding the doll incident, including the exact time of day, whether E.A.'s door was closed or merely ajar, and whether she was in a dress or a nightgown. Significantly, he questioned Mother as to why she was willing to allow E.A. to go to the scheduled Father's Day visit, days after E.A. alleged that he sexually abused her. Mother responded that Father had previously threatened her with contempt for denying visitation. On redirect, Mother testified that, upon the advice of CYS after the

7. While we do not speak to whether the ALJ properly ruled upon the admissibility of the tape, we observe that the ALJ appears to have followed the analysis set forth in Section 5986, as applied to expungement hearings by this Court's decision in *A.Y.*, 537 Pa. 116, 641 A.2d 1148 (1994), discussed in detail *infra*.

8. As noted by the Chief Justice, Father raised additional issues to the Commonwealth Court regarding E.A.'s unavailability and the admission of the videotape, which are not before this Court. However, as we read the record, Father's failure to object, and thus his waiver, extends to all issues related to E.A.'s unavailability and to the admission of the videotape. Therefore, we respectfully decline to remand the case for the Commonwealth Court to address these issues.

videotaped interview, she did not allow E.A. to visit Father the following regular visitation weekend. Father also elicited Mother's admission that E.A. had called one of Mother's former boyfriend's "daddy;" however, Mother noted that she had been separated from the boyfriend for several years and was confident that E.A. was accusing Father of the sexual assault. N.T., April 20, 2010, at 82.

Wyoming Co. CYS next presented its caseworker, who recounted her decision to file an indicated report of sexual abuse with ChildLine regarding Father, based upon her review of the progress notes of the Broome Co. Caseworker and after viewing the video. She asserted that "child was consistent and clear" in her statements. *Id.* at 89.

Via telephone, Wyoming Co. CYS called the Broome Co. Caseworker who watched the interview and prepared the progress notes of the investigation utilized at the hearing. Regarding the interview, the caseworker opined that E.A.'s descriptions were "credible for [her] being four years old." *Id.* at 122. She emphasized that E.A. indicated her understanding of what a lie was by saying that "if it's a lie, it didn't really happen." *Id.* at 114. The Caseworker displayed her insights regarding young children in sexual assault cases by explaining why E.A. might have described Father's semen as "yellow." The Caseworker observed, "kids usually say that, that it was yellow, because they don't know what it is." *Id.* at 119.

At the April 20, 2010, hearing, Father was represented by counsel. The ALJ instructed counsel, "We're not going to go back and rehash the [March 15, 2010] hearing;" instead, the ALJ observed that any arguments could be made on appeal. N.T., April 20, 2010, at 5. The video of the interview was then played for the ALJ, without objection by counsel to either the playing of the video or its eventual admission into evidence. Wyoming Co. CYS additionally presented the testimony of one of the officers who assisted with difficult custody transfers. The officer asserted that he had only assisted with E.A.'s custody transfers twice.

156

Father also testified during the second day of the hearing. He claimed that officers were involved in approximately fifteen transfers, rather than the two to which the officer testified. He also asserted that once E.A. was in the car, she would become calm very quickly. Turning to the videotaped interview, Father raised questions about the Investigator and Caseworker's assessment of E.A. as being credible and consistent. He disputed their interpretation of E.A.'s use of the term "butt" to apply credibly to all male and female genitalia, asserting that E.A. only used the term "butt" to apply to "[h]er actual behind." *Id.* at 61. Additionally, he emphasized that E.A. had never used some of the terms that she used in the video, such as "nuts" and "weenie," which would suggest that someone coached her to use those terms to level accusations against him. *Id.* at 62. Father also attempted to undermine a portion of the video in which E.A. alleged that Father had climbed into her bed and unzipped her pajamas before licking her. He maintained that E.A. did not wear pajamas with zippers and that it would have been impossible for him to have climbed into her bed due to its construction. *Id.* at 65.

After receiving Father's testimony, the ALJ continued the hearing until July 12, 2010, to take the testimony of Father's mother (Grandmother). Grandmother supported Father's testimony regarding the custody transfers and E.A.'s knowledge of body part terminology. Grandmother further related that during the time of the alleged abuse E.A. stated that Mother's boyfriend's son "change[d]" her, which Grandmother assumed referred to a diaper, and then she "wiggled her butt backwards." N.T., July 12, 2010, at 14. When E.A. said that she was naked when the boy changed her, Grandmother told E.A. not to remove her underwear. Grandmother further recounted a different time when E.A. had pain when urinating at her house. Grandmother assumed it was a urinary tract infection, emphasizing that E.A. did not suggest that anyone had touched her inappropriately. The hearing concluded after Grandmother's testimony.

The ALJ issued an adjudication which found all witnesses credible other than Father.[9] The ALJ noted that Wyoming Co. CYS had the "burden of presenting substantial evidence" that Father sexually abused E.A. to support an indicated report as defined in 23 Pa.C.S. § 6303(a), *see supra* at 373, n.4. Adjudication at 8. "Substantial evidence" is defined by the Child Protective Services Law as "Evidence which outweighs inconsistent evidence and which a reasonable person would accept as adequate to support a conclusion." 23 Pa.C.S. § 6303(a). The ALJ observed that "the alleged licking of E.A.'s vaginal area and anal area, along with the alleged intercourse and digital penetration constituted child sexual abuse" as defined in 23 Pa.C.S. § 6303. Adjudication at 8.

The ALJ reiterated in the adjudication her conclusions regarding the admissibility of videotaped interview as set forth above. Turning to the merits, the ALJ summarized her findings regarding the videotaped interview:

E.A.'s allegations were consistent and credible. E.A. stated that her father licked her "front butt" and "back butt", that Appellant placed his fingers in her "butt", that Appellant put his "butt" inside her "butt", and that the aforementioned behavior hurt her vagina, but that E.A. couldn't put a Band–Aid on the injury. During the interview, E.A. consistently identified the Appellant as the perpetrator of sexual abuse on her.

*Id.* at 9. The ALJ found "the video-tape accurately recorded the interview, disclosed at all times the identity, images, and voices of the interviewer and E.A., and E.A.'s statements were neither made in response to questions calculated to lead E.A. to make a particular statement nor the product of improper suggestion." *Id.*

The ALJ concluded that Father did not present any contrary evidence and rejected Father's attempts to undermine E.A.'s credibility:

9. While ALJ Barbara Nause presided over all three days of the hearing, the adjudication was signed by ALJ James L. Bobeck, for undisclosed reasons. We will refer to both judges generally as the ALJ.

Although E.A. appeared occasionally distracted in her interview and made off-hand comments about her dogs,[10] E.A. was consistent at all times about the incidents involving sexual abuse and that Appellant was the perpetrator. Moreover, any minor distractions or off-hand comments by E.A. are understandable of any 4 year old child over the span of an hour long interview, and E.A. cannot be deemed—non-credible on the basis of occasional distractions.

*Id.* at 9. As set forth in the definitions in Section 6303(a), the ALJ observed that the characterization of a report as "indicated" must be supported by only substantial evidence, and did not have to meet the criminal standard of proof beyond a reasonable doubt. The ALJ, accordingly, found that CYS met its burden and denied Father's appeal. The Bureau adopted the ALJ's adjudication in full on March 10, 2011.

Father petitioned the Commonwealth Court for review of the denial of his request to expunge the indicated report. Father raised two issues related to the admission of the videotaped interview. Given that Father never objected to the admission of the videotape, as discussed *supra* at 374, we find these issues waived and will not address their merits. Father also challenged the ALJ's determination that substantial evidence supported the indicated report. He argued that the videotaped testimony was inconsistent, potentially coached, and not supported by corroborating evidence.

The Commonwealth Court reversed the denial of expungement. *E.A. v. Com., Dept. of Public Welfare,* 41 A.3d 131 (Pa.Cmwlth.2012). In summarizing the facts as stated above, the Commonwealth Court emphasized the potential inconsistencies in Mother's testimony regarding exactly what time the doll incident occurred (whether it was during the day or in the evening), whether E.A. was wearing a dress or a nightgown, and why Mother allowed her daughter to visit with Father for

10. During the interview, E.A. alleged that her dogs had also licked her and that her father had licked a cow's "butt." Exhibit C–3, Progress Notes, at 5. We note that E.A. apparently lived with dogs and her paternal grandparents lived on a dairy farm.

Father's Day soon after being informed of the potential abuse. *Id.* at 134. In contrast, the court seemingly credited portions of Father's testimony alleging impossibilities in the video, including the construction of E.A.'s bed, her lack of zippered pajama's, E.A.'s use of previously unknown terms for body parts, and her use of the term "butt" for all parts of male and female genitalia.

The Commonwealth Court reviewed Section 5986, the hearsay exception for child victims enacted for dependency proceedings but also utilized in expungement hearings under the Child Protective Services Law. The court observed that Section 5986 provides for the admission of a child's out-of-court testimony if (1) the child is describing specified sexual acts and the court finds that the evidence is "relevant and that the time, content and circumstances of the statement provide sufficient indicia of reliability" and (2) the child either testifies or is found to be unavailable. 42 Pa.C.S. § 5986(a).[11] The court recognized a child can be deemed unavailable if the child

11. In relevant part, Section 5986, entitled "Hearsay," provides:
   (a) General rule.—A statement made by a child describing acts and attempted acts of indecent contact, sexual intercourse or deviate sexual intercourse performed with or on the child by another, not otherwise admissible by statute or court ruling, is admissible in evidence in a dependency proceeding initiated under Chapter 63 (relating to juvenile matters), involving that child or other members of that child's family, if:
      (1) the court finds, in an in camera hearing, that the evidence is relevant and that the time, content and circumstances of the statement provide sufficient indicia of reliability; and
      (2) the child either:
      (i) testifies at the proceeding; or
      (ii) is found by the court to be unavailable as a witness.
   (b) Emotional distress.—In order to make a finding under subsection (a)(2)(ii) that the child is unavailable as a witness, the court must determine, based on evidence presented to it, that testimony by the child as a witness will result in the child suffering serious emotional distress that would substantially impair the child's ability to reasonably communicate. In making this determination, the court may do all of the following:
      (1) Observe and question the child, either inside or outside the courtroom.
      (2) Hear testimony of a parent or custodian or any other person, such as a person who has dealt with the child in a medical or therapeutic setting.
   42 Pa.C.S. § 5986(a), (b).

will suffer "serious emotional distress that would substantially impair the child's ability to reasonably communicate." *Id.* § 5986(b).

The Commonwealth Court recognized that this Court in *A.Y. v. Department of Public Welfare*, 537 Pa. 116, 641 A.2d 1148 (1994), formulated guidelines for the admission of hearsay statements in expungement cases under Section 5986 and also guidelines for determining when the hearsay statements of child victims, if admissible, can constitute the "substantial evidence" necessary for an "indicated report" under the definitional section of the Child Protective Services Law, 23 Pa.C.S. § 6303(a).[12] *A.Y.* set forth different standards depending on whether the hearsay statements were uncorroborated or were supported by other admissible evidence. As discussed more fully below, *A.Y.* holds that uncorroborated hearsay can constitute substantial evidence for an indicated report if it is accurately recorded, discloses the identity of all present when the recording was made, and if the statement was not the result of leading or otherwise improper questioning. *A.Y.*, 641 A.2d at 1153.

Rather than addressing the specific requirements in *A.Y.* for uncorroborated hearsay, the Commonwealth Court in the instant case opined, "We have been unable, however, to find a single instance of an indicated report of abuse being based upon a single, out-of-court statement of a child of any age, let

12. We recognize that the hearsay exception of Section 5986 has been amended since our decision in *A.Y.* to add subsections (a)(2), (b), and (c), addressing the unavailability of the child and confrontation rights of the defendant relating to the availability question. These amendments are not relevant to the issues before this Court.

Additionally, this Court in *A.Y.* observed that the allegations in that case were controlled by the definition of "indicated report" set forth at 11 P.S. § 2203, but recognized that the section had been repealed and reenacted in 1990 as 23 Pa.C.S. § 6303. The iterations of the definition are substantially the same for purposes of this opinion. The prior statute defined "Indicated report" as "a report made pursuant to this act if an investigation by the child protective service determines that substantial evidence of the alleged abuse exists based on (i) available medical evidence, (ii) the child protective service investigation or (iii) an admission of the acts of abuse by the child's parent or person responsible for the child's welfare." *A.Y.*, 641 A.2d at 1149 n. 1.

alone a child of four years." *R.A.*, 41 A.3d at 140. Arguably setting forth a more stringent standard specifically for young children, the Commonwealth Court held, "Where the hearsay statement is that of a very young child, corroboration is needed to find that a perpetrator engaged in sexual intercourse, cunnilingus and digital penetration of the child." *Id.* at 141.

Turning to E.A.'s videotaped statement, the court implicitly questioned whether the interviewer utilized improper methods of questioning, seemingly accepting, *sub silentio*, Father's argument that the interviewer's questions were suggestive, E.A.'s answers were inconsistent, and E.A. showed signs of being coached based on her use of terminology, which Father considered beyond her vocabulary. The court further highlighted that the interviewer neither explored E.A.'s statements that Mother did not like Father nor questioned the child regarding Mother's current boyfriend and his son. Emphasizing the rambling nature of E.A.'s statements along with inconsistencies and allegedly fantastical aspects, the court concluded that E.A.'s videotaped statement was "simply not competent to stand as the sole support of a finding of sexual abuse." *Id.* at 140.

The court also considered Wyoming Co. CYS's claim that it met its burden of substantial evidence because the statement was corroborated through the testimony of the Broome Co. Interviewer and Caseworker. The court, however, agreed with Father that the witnesses could not provide corroboration of E.A.'s claims because they merely restated what occurred in the videotaped interview. *Id.* The court additionally criticized the Wyoming Co. CYS because it "did not investigate Father's background, character, reputation or family or offer any evidence such as a physical exam or evaluation of a physician or psychologist to corroborate the New York DVD hearsay statement." *Id.* at 141. The court, however did not address the potential corroboration of E.A.'s videotaped testimony by Mother. Ultimately, the Commonwealth Court reversed DPW's order denying expungement.

We granted review to determine whether the "Commonwealth Court erred by requiring that the videotape statement of a young victim of sexual abuse be corroborated by other evidence." *In re E.A.*, 618 Pa. 156, 55 A.3d 1048 (2012).[13] Wyoming Co. CYS and DPW assert that the Commonwealth Court failed to follow the guidelines of *A.Y.* concerning when hearsay statements of child victims constitute the necessary "substantial evidence" required for the filing of an "indicated report" under the definitional section of the Child Protective Services Law, 23 Pa.C.S. § 6303(a). They contend that the court erred because our caselaw does not require corroborative evidence for a finding of substantial evidence and does not differentiate based on the relative youth of the child victim. Additionally, DPW argues that the Commonwealth Court opinion suggests a need for additional investigation and medical examination by CYS, which is not required by *A.Y.* DPW adamantly rejects these additional investigatory requirements, emphasizing that physical evidence is not present in many cases, often because children do not disclose the abuse immediately. According to DPW, the Commonwealth Court's actions have "significantly impaired the ability of county children and youth agencies to meet their burdens of proof in child abuse appeals when the subject child is of a young age, and when the abuse is sexual in nature and leaves no other medical or physical evidence." DPW Brief at 10.

Assuming *arguendo* that the statement failed the more stringent test for substantial evidence as an uncorroborated statement, CYS also argues that E.A.'s statements constitute substantial evidence for an indicated report under the Child Protective Services Law when corroborated by Mother's testimony regarding the doll incident. CYS emphasizes that the ALJ found Mother and Child credible and, notably, found Father not credible. It asserts that the Commonwealth Court

---

**13.** While CYS and DPW also challenge the Commonwealth Court's holding that the ALJ improperly admitted the videotape, we will not address the merits of that issue because Father failed to object to the admissibility of the videotape before the ALJ, thereby waiving that issue. Given that the Commonwealth Court also reversed the denial of expungement based on the lack of substantial evidence for an indicated report, we will address that remaining issue.

erred in overturning the ALJ's credibility findings and resulting determination that substantial evidence existed for an indicated report of abuse, a conclusion which was supported by evidence from the videotape and multiple witnesses, including Mother.

Father responds that the Superior Court correctly concluded that CYS did not present substantial evidence of his abuse of E.A. because the videotaped statement was not sufficiently corroborated. Father, however, ignores the guidelines in *A.Y.* providing that certain properly recorded hearsay statements of child victims can constitute substantial evidence supporting an indicated report without corroboration. *A.Y.*, 641 A.2d at 1153. He instead relies upon cases that did not involve recorded hearsay statements. *See A.O. v. Com., Dept. of Public Welfare*, 838 A.2d 35 (Pa.Cmwlth.2003) (finding substantial evidence based on unrecorded statements made by child to investigator which were corroborated by other witnesses); *L.S. v. Com., Dept. of Public Welfare*, 828 A.2d 480 (Pa.Cmwlth.2003) (involving testimony from a caseworker regarding her interview of children, which was corroborated by other witnesses, but nonetheless deemed insufficient). Father also emphasizes other cases where a child's hearsay testimony is corroborated by medical evidence, but again the cited cases do not involve a recorded interview. *See A.O.*, 838 A.2d at 35; *B.E. v. Com., Dept. of Public Welfare*, 654 A.2d 290 (Pa. Cmwlth.1995).

Relying upon these cases, Father contends that the hearsay videotape of E.A. does not constitute substantial evidence absent corroboration. He rejects the Wyoming Co. CYS caseworker's conclusion that E.A.'s statements were "consistent and clear" and instead contends that the investigators made "huge assumptions of what E.A. meant in terms of body parts." Brief of Father at 19. Father stresses that E.A.'s confusion over body part terminology was inconsistent with her normal vocabulary, and suggests that E.A. may have been coached by other people in her testimony. Father also asserts that E.A.'s inability to describe "licking" accurately is indicative of the unreliability of the videotape: "Her answer to 'what

does lick mean?' was 'someone gets in trouble' and to 'what part of his body does he use to lick?' was 'his back' and 'the back of his butt.' " Brief of Father at 20.

Father argues that the interviewer ignored E.A.'s responses which revealed Mother's animosity toward Father, when they should have raised a red flag indicating that Mother could have coached E.A.'s allegations. Brief of Father at 20. Father emphasizes the absence of medical evidence of abuse or any further investigation by Wyoming Co. CYS. He contends, "a single, uncorroborated video hearsay statement of a four year old, replete with leading questions, did not amount to substantial evidence to support a finding of sexual abuse of the child by her Father." Brief of Father at 22.

Father also rejects Appellants alternative argument that the substantial evidence standard is met through the combination of E.A.'s videotaped statements and the corroborating testimony of Mother. Instead, in an argument more appropriately addressed to the fact-finder, Father contends that Mother's testimony was not credible given what he asserts are factual discrepancies in the doll incident and the logical discrepancy raised by Mother allowing E.A. to go to Father's the day after E.A. alleged Father abused her. Father argues that the Commonwealth Court correctly determined that the ALJ misapplied the law when she found that evidence in this case constituted substantial evidence of sexual abuse.

██ We have stated that our review of cases involving a request to expunge an indicated report "requires that the agency decision be affirmed absent a finding that constitutional rights were violated, an error of law was committed, that the procedure before the agency was contrary to statute, or that the findings of fact are not supported by substantial evidence." *P.R. v. Com., Dept. of Public Welfare*, 569 Pa. 123, 801 A.2d 478, 481 (2002).

As the parties and tribunals below have recognized, the use of out-of-court statements by children in expungement cases is controlled by this Court's decision in *A.Y. v. Com., Dept. of Public Welfare*, 537 Pa. 116, 641 A.2d 1148 (1994), applying the

statutory hearsay exception for dependency cases, 42 Pa.C.S. § 5986, to Child Protective Services Law cases and determining when such hearsay statements may constitute the requisite substantial evidence to support an indicated report under 23 Pa.C.S. § 6303(a).[14] In *A.Y.*, the agency filed an indicated report after a three-year old alleged that her babysitter had licked her genital area in an unrecorded interview.[15] Upon an appeal from the denial of expungement, the hearing officer heard testimony from the child's mother, an agency case worker, and a representative of the hospital. The hearing officer found that the agency had presented substantial evidence of abuse and the Commonwealth Court affirmed.

Upon appeal, this Court reiterated that during administrative hearings Commonwealth agencies are not bound by the technical rules of evidence and that all probative evidence may be received, including hearsay evidence not otherwise admissible under the rules of evidence. *Id.* at 1150. We then noted that the Commonwealth Court had relaxed the standard for admission of hearsay evidence in child abuse expungement cases by adopting the statutory standard for hearsay in dependency cases. *Id.* at 1151.

In reviewing this new standard, we wrestled with the conflicting needs of protecting the child in cases where physical evidence rarely exists but, also, upholding the constitutional rights of the accused. We emphasized that the problem did not involve the admissibility of the hearsay but, instead, reliance on hearsay as constituting the necessary substantial evidence for purposes of the Child Protective Services Law. The Court noted that the Commonwealth Court's lax approach

14. We recognize that this Court has granted review to consider the Commonwealth Court's recent decision imposing a "clear and convincing" evidentiary standard of proof, rather than the statutory standard of "substantial evidence," in cases involving the expungement of indicated reports under the Child Protective Services Law. *G.V. v. Com., Dept. of Public Welfare*, 620 Pa. 58, 66 A.3d 252 (2013) (granting allowance of appeal). As *G.V.* has not yet been decided, we review the case at bar under the statutory substantial evidence standard.

15. As this Court noted, the indicated report essentially blocked babysitter's chosen career as she was pursuing a graduate degree in psychology, with the intent to work with families in crisis.

made it possible for the agency to "black list" the babysitter merely through the caseworker's testimony summarizing her interview of the child, "without producing the victim, any independent corroborative evidence, any recording of the victim's interview, not even a verbatim transcript of the victim's statement." *Id.* at 1152. In response, after careful consideration of the competing interests, we found ourselves "compelled" to announce more stringent guidelines for expungement proceedings:

1. Hearsay testimony of a child victim will be admitted in accordance with the standards set forth in 42 Pa.C.S. § 5986, and this rule shall be applied to permit the testimony of the victim's parents and other family members as well as those professionals charged with investigating incidents of child abuse;

2. Hearsay testimony in conjunction with admissible corroborative evidence of the act(s) in question can *in toto* constitute substantial evidence which will satisfy the Agency's burden to justify a conclusion of abuse.

3. However, *uncorroborated* hearsay cannot satisfy the Agency's burden unless it comports with the following requirements:

a) the statement was accurately recorded by audio or video equipment;

b) the audio-visual record discloses the identity and at all times included the images and/or voices of all individuals present during the interview of the minor; and

c) the statement was not made in response to questioning calculated to lead the minor to make a particular statement and was not the product of improper suggestion.

*A.Y.*, 641 A.2d at 1153 (emphasis in original).

Upon review of our decision in *A.Y.*, we conclude that the Commonwealth Court erred by creating a more stringent test for uncorroborated hearsay for "young children," and failed to consider properly the third guideline in *A.Y.*, addressing when uncorroborated hearsay may constitute substantial evidence to support an indicated report of sexual abuse under Section

6303(a) of the Child Protective Services Law. We respectfully reject the Commonwealth Court's imposition of additional requirements and instead rely upon the balance struck by this Court in *A.Y.* Moreover, the Commonwealth Court improperly required, in most cases, medical or other evidence to corroborate the hearsay statements, in conflict with the statutory language contained in Section 6303. This section defines an "indicated report" as one supported by substantial evidence "based on any of the following: (1) Available medical evidence[,] (2) The child protective service investigation[,] (3) An admission of the acts of abuse by the perpetrator." *Id.* Notably, the statute does not require medical evidence but, instead, allows for a finding of substantial evidence purely on the agency's investigation, which we deem to encompass the interview of the child.

■ Applying *A.Y.* to the case at bar, we will assume that the first guideline in *A.Y.*, requiring compliance with the hearsay exception of 42 Pa.C.S. § 5986, is met given that Father did not object to the admission of the videotape. While we ultimately determine that the substantial evidence standard is also met through the corroboration of the videotaped statement under the second guideline of *A.Y.*, we first consider whether the videotaped statement alone could constitute substantial evidence under the third guideline of *A.Y.*, requiring uncorroborated hearsay statements of child victims to have been accurately recorded, to identity the images and voices of all present during the interview, and to involve statements not made in response to leading questions or improper suggestion.

Father does not dispute that the statement was accurately recorded and that it disclosed the identity and, at all times, at least the voices of those present during the interview. Father argues that the questions were leading and that E.A.'s answers were the product of improper suggestion. The ALJ, however, rejected these arguments. Adjudication at 9. Finding Father not credible, the ALJ instead credited the testimony of the Broome Co. Interviewer and Caseworker, who had extensive training in forensic interviewing involving child sex-

ual abuse. After hearing their testimony and watching the video, the ALJ concluded that the questions were not leading or improperly suggestive. Deferring to the fact finder's credibility determinations, as we must and the Commonwealth Court erred in failing to do, we conclude that the record supports the conclusion that the videotape satisfies the third guideline of *A.Y.* addressing uncorroborated hearsay statements and may be considered substantial evidence on its own.

As noted above, an indicated report must be expunged if the relevant child protective service agency cannot satisfy its burden to show substantial evidence of the alleged sexual abuse. *See* 23 Pa.C.S. § 6303(a); *see also* § 6341 ("Amendment or expunction of information"). To present substantial evidence, the Child Protective Services Law requires, "Evidence which outweighs inconsistent evidence and which a reasonable person would accept as adequate to support a conclusion." 23 Pa.C.S. § 6303(a).

In the videotaped interview, E.A. alleged that Father licked her vaginal and anal area and vaginally penetrated her, which if credited, indisputably constitutes "sexual abuse" under 23 Pa.C.S. § 6303. While Father presented testimony that was inconsistent with E.A.'s statements, the ALJ found him to be not credible. While one could potentially question whether a reasonable person would find E.A.'s statements credible if she were an older child or an adult given the rambling nature of the interview, some of the inconsistencies in her statements, and some unrealistic elements, we conclude that it was not unreasonable for the ALJ to credit E.A.'s statements, in part because of the testimony of the Caseworkers and Interviewer who found E.A. to be extremely credible for a four-year-old. Unlike the average lawyer or judge, these individuals are trained in interviewing young victims of sexual assault. Accordingly, we conclude that E.A.'s videotaped interview alleging sexual abuse by Father constitutes substantial evidence under 23 Pa.C.S. § 6303, as applied by *A.Y.* to hearsay statements of child victims.

■ Even assuming E.A.'s statement alone would not be sufficient, we note that Mother's testimony, credited by the ALJ regarding the doll incident, provides corroboration of the videotape alleging sexual abuse by Father. Therefore, we likewise would conclude that the videotape, corroborated by Mother's testimony, would constitute substantial evidence for purposes of Section 6303 to deny expungement of the indicated report under the guideline in *A.Y.* addressing corroborated hearsay statements.

Accordingly, we reverse the decision of the Commonwealth Court.

Justices SAYLOR, EAKIN and McCAFFERY join the opinion.

Chief Justice CASTILLE files a concurring and dissenting opinion in which Justice TODD joins.

Chief Justice CASTILLE, concurring and dissenting.

I join Mr. Justice Baer's learned Majority Opinion in full with respect to the issues that are properly before this Court. I respectfully dissent, in part, only because I believe the mandate here should include a remand for disposition of appellee's constitutional argument, which was not passed upon below and is not before us.

As the Commonwealth Court explained, appellee, who was the appellant before the Commonwealth Court, presented three distinct questions for that court's review.

First, he assert[ed] that allowing the New York DVD of Daughter's interview to be admitted into evidence under the tender years exception to the hearsay rule violated his constitutional right to confront witnesses against him.

Second, [appellee] contend[ed] that the hearing officer erred, procedurally, in admitting the New York DVD and determining that Daughter was unavailable to testify without having first talked to Daughter. Third, [appellee] argue[d] that the critical factual findings that he sexually

170

abused his daughter are not supported by substantial evidence.

*R.A. v. Dep't of Pub. Welfare,* 41 A.3d 131, 136–37 (Pa.Cmwlth. 2012). The Commonwealth Court began its analysis with the third and final issue, ultimately concluding: "substantial evidence does not support the factual finding that [appellee] committed a sexual assault. . . ." *Id.* at 141. With respect to the second issue, whether the hearing officer should have admitted the DVD without first interviewing Daughter, the Commonwealth Court agreed with appellee that the hearing officer erred. In light of these holdings, the Commonwealth Court granted appellee relief, while expressly opting not to address appellee's remaining constitutional issue, namely, whether the proceedings before the hearing officer violated appellee's constitutional right to confront the witness against him. *Id.* at n. 11 ("In light of this holding, we need not address [appellee]'s constitutional issue."). The panel's decision to resolve the case on nonconstitutional grounds, when presented with multiple allegations of error, is a proper approach. *In re Stevenson,* 608 Pa. 397, 12 A.3d 273, 275 (2010) ("[A]s a general matter, it is better to avoid constitutional questions if a non-constitutional ground for decision is available."); *Commonwealth v. Karetny,* 583 Pa. 514, 880 A.2d 505, 519 (2005) ("[T]his Court seeks to avoid constitutional issues if the claim may be resolved on alternative grounds."). The Majority reverses the Commonwealth Court on those nonconstitutional issues, and properly so.

However, appellee's constitutional argument remains pending, it has not been briefed here (as it was not accepted for discretionary review), and thus, the case should be remanded for decision of the issue by the intermediate appellate court. As the Majority notes, we granted review exclusively to address the issue of whether the Commonwealth Court erred by requiring corroboration in support of the videotaped statement at issue as pertaining to the substantial evidence standard. We have not, nor should we have, addressed the constitutional due process argument which appellee raised below.

I recognize that the Majority states that, given counsel's record statement of "no objection" to the formal admission of the child's DVD testimony, which occurred at the second hearing, "appellee waived **any** objections to the admission of the videotaped interview by failing to preserve the issue before the ALJ." Majority Op. at 154, 82 A.3d at 374 (emphasis added). The Majority does not indicate that it intends, by this broad conclusion, to rule upon issues not accepted for review, and thus to obviate, *sub silentio*, the necessity for a remand; more likely, it is an oversight.[1] In any event, the statement is overbroad as to the issues actually before us; the Commonwealth Court never passed upon whether the constitutional issue was properly preserved; and the constitutional issue (including the sub-issue of issue preservation) should be resolved, in the first instance, by the Commonwealth Court following targeted briefing. Hence, as to mandate, I would reverse and remand to the Commonwealth Court for resolution of the remaining claim.

It is worth noting that the constitutional issue is of some substance. While Section 505 of the General Rules of Administrative Practice and Procedure, 2 Pa.C.S. § 505, provides that "Commonwealth agencies shall not be bound by technical rules of evidence at agency hearings," it also provides that "[r]easonable examination and cross-examination shall be permitted." *Id.* Beyond that, legitimate constitutional concerns are implicated in DPW's expungement proceedings pertaining to indicated reports of child abuse or child sexual assault, as the accused person's reputation is at stake. Reputation is a fundamental interest under the Pennsylvania Constitution, which cannot be abridged without compliance with constitu-

---

1. I recognize that the Majority Opinion has responded to my concern by adding a footnote declaring that it does, in fact, intend its broad statement to stand as a definitive and final ruling upon the issue of whether appellee waived his constitutional due process issue. The responsive declaration, however, does not come to terms with the salient points I have made in the text. Respectfully, the declaration does not alleviate my concerns, as in foreclosing appellee's constitutional issue without affording appellee an opportunity to be heard on the matter, the Majority leaves itself open to the charge of an additional, and gratuitous, due process infraction.

tional standards of due process. *R. v. Dep't of Pub. Welfare,* 535 Pa. 440, 636 A.2d 142, 149 (1994) ("Having determined that R. has a protected interest that will be affected by his expungement hearings, we must assess the extent to which he will be deprived of that interest."). In that case, the Court reasoned:

> [W]e are mindful of the nature of the inquiry being conduct-ed at an expungement hearing and the role that cross-examination plays in it. An expungement hearing is devot-ed to determining whether information in an indicated re-port is either inaccurate or is being maintained in a manner inconsistent with the Child Protective Services Act.... This factual determination will partly depend on the credibility and veracity of testimonial evidence. **Cross-examination plays a crucial role in this regard because it enables the accused to expose testimonial weaknesses** which would cause a fact finder to discount the weight of the testimony of an adverse witness.

*Id.* at 150 (emphasis added) (citations omitted). Thus, in the context of expungement hearings before DPW, the accused's right to cross-examine witnesses is both statutorily provided and constitutionally protected. As stated in *R. v. DPW,* however, such cross-examination can take a variety of forms, which may vary according to the tender age of a child-witness and/or for the protection of the child's emotional well-being.

In *R. v. DPW,* the Court held that the accused received Fourteenth Amendment due process because he was afforded a meaningful opportunity to cross-examine the child-witness against him where his attorney was permitted to question the witness during an *in camera* proceeding, despite the fact that the accused was not allowed to be present during the hearing, and was not permitted to communicate with his attorney during the cross-examination. Notably, after the child fin-ished testifying on direct examination in that case, DPW provided a transcript of her testimony to the accused and his attorney to review in preparation for cross-examination. "This procedure allowed R. to know precisely what evidence

the government was using to prove its case, and gave R. an opportunity to challenge that evidence." *Id.* at 150.

In this case, appellee had no opportunity to cross-examine his daughter. The question of waiver is complicated by appellee's tardiness in securing counsel, and the ALJ's March 15, 2010 determination not to afford him a continuance to secure counsel when admission of the DVD was first discussed. As the Majority notes, although the ALJ approved admission of the DVD at that hearing, it was not actually viewed because of technical difficulties, a circumstance that undercut the ALJ's rationale for denying a continuance. The ALJ held a second hearing on April 20, 2010, where the DVD was introduced. At that time, appellee appeared with counsel. Concerning the issue of Daughter's unavailability, the ALJ informed appellee's counsel at the outset, "We're not going to go back and rehash the hearing." N.T., 4/20/10, at 6. Whether these circumstances, and counsel's later failure to lodge an objection to formal admission of the DVD, in fact operate to waive the constitutional claim, is a matter for the Commonwealth Court to determine in the first instance.

For these reasons, although I join the Majority with respect to the issues accepted for review, I respectfully dissent from its mandate of straight reversal, as I favor a remand to the Commonwealth Court to address the remaining constitutional issue.

Justice TODD joins this opinion.