# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kelly Hinnershitz and Manuel :
Torres-Columbo, :
     Petitioners :
       :
    v. : No. 1977 C.D. 2014
       : Submitted:  June 19, 2015
Department of Public Welfare, :
     Respondent :


**BEFORE: HONORABLE DAN PELLEGRINI, President Judge**
     **HONORABLE P. KEVIN BROBSON, Judge**
     **HONORABLE JAMES GARDNER COLINS, Senior Judge**


*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**     **FILED:  August 12, 2015**


    Petitioners Kelly Hinnershitz and Manuel Torres-Columbo, *pro se*, petition for review of an order of the Department of Public Welfare[1] (DPW), Bureau of Hearings and Appeals (BHA), dated September 29, 2014.  The BHA's order denied Petitioners' appeal of Berks County Children & Youth Services' (CYS) denial of Petitioners' application to become kinship care foster parents for their granddaughter, B.M.  For the reasons set forth below, we now affirm.

---

[1] The General Assembly recently redesignated the Department of Public Welfare as the Department of Human Services.  Section 103 of the Act of June 13, 1967, added by the Act of September 24, 2014, P.L. 2458.

Petitioners are paramours who have lived together since 1993. Petitioners' grandson, E.M., and their daughter, V.T., both live with Petitioners. Petitioners applied to become kinship care foster parents for their granddaughter, B.M., on October 11, 2013. (Certified Record (C.R.), at 29.) CYS conducted home studies on October 13, 2013, November 8, 2013, November 27, 2013, and December 13, 2013. (*Id.* at 17.) CYS also required Mr. Torres-Columbo to undergo a psychological evaluation. A CYS family resource coordinator, Samantha Zerr, recommended that CYS deny Petitioners' application, because Mr. Torres-Columbo had been aggressive toward CYS employees, Mr. Torres-Columbo's psychological evaluation indicated that he should seek anger management counseling, and Petitioners were untruthful about Mr. Torres-Columbo's smoking and criminal history on their application. (*Id.* at 23.) CYS denied Petitioners' application, and Petitioners appealed. An administrative law judge (ALJ) conducted a hearing for the BHA.

At the hearing before the ALJ, CYS presented the testimony of Ms. Zerr, Amanda Wargo, and Arthur Hamarich. Petitioners presented the testimony of Donna Morganti and Manuel Torres-Columbo. Ms. Zerr testified that she was the resource family coordinator that CYS assigned to work with Petitioners throughout the kinship care foster parent application process. (Notes of Testimony (N.T.), 7/22/14, at 30-31.) She testified that Petitioners' application was missing information concerning Petitioners' consumption of alcohol. (*Id.* at 31.) The application also contained untruthful information. Specifically, Petitioners indicated that Mr. Torres-Columbo had never been arrested or convicted of a crime, but Mr. Torres-Columbo's criminal history report showed that he had been arrested for simple assault and convicted of public drunkenness.

2

(*Id.* at 32-33, 50.) Petitioners further provided that there had never been a protection from abuse order (PFA) filed against them. (*Id.* at 33-34.) Ms. Zerr discovered, however, that B.M.'s father, A.L., had filed an emergency temporary PFA against Mr. Torres-Columbo. (*Id.* at 34.) Further, Petitioners indicated that they did not smoke, but Ms. Zerr observed Mr. Torres-Columbo smoking. (*Id.* at 35.)

Ms. Zerr testified that she was concerned about Mr. Torres-Columbo's mental state after she received the psychological evaluation completed by Mr. Hamarich, which indicated that Mr. Torres-Columbo would benefit from anger management counseling and "could improve on how he cooperates with [CYS] staff." (*Id.* at 41-42.) There was no indication that Mr. Torres-Columbo complied with Mr. Hamarich's recommendations. (*Id.* at 65.) Further, Mr. Torres-Columbo was aggressive and argumentative during his interactions with Ms. Zerr. (*Id.* at 43.) She felt that Mr. Torres-Columbo was attempting to intimidate her, and she became anxious about visiting Petitioners' home for home studies and meetings. (*Id.* at 44.) Mr. Torres-Columbo called CYS multiple times a day and would come to the office without an appointment, demanding to see a CYS employee if he did not receive an answer on the phone. (*Id.*) In one instance, Mr. Torres-Columbo saw Ms. Zerr across the street and "began yelling, saying hi, Ms. Zerr, I know you saw me, why are you ignoring me?" (*Id.* at 48.) This behavior made Ms. Zerr uncomfortable. (*Id.* at 49.)

Ms. Zerr also indicated that Mr. Torres-Columbo had been involved in a physical altercation with A.L. (B.M.'s father), during which A.L. sustained injuries requiring hospitalization. (*Id.* at 56.) Mr. Torres-Columbo initiated the altercation. (*Id.*) A.L. requested the PFA against Mr. Torres-Columbo as a result

3

of this altercation.  (*Id.* at 57.)  Mr. Torres-Columbo subsequently sought a PFA against A.L.  (*Id.* at 58.)  The charges against Mr. Torres-Columbo which resulted from the altercation were ultimately dismissed.  (*Id.* at 60.)  Ms. Zerr explained that the police had also responded to Petitioners' home to investigate a domestic dispute between Mr. Torres-Columbo and Ms. Hinnershitz.  (*Id.* at 93-94.)  With respect to Ms. Hinnershitz, Ms. Zerr testified that she had observed E.M. fail to respond to Ms. Hinnershitz's direction, and Mr. Torres-Columbo had to intervene.  (*Id.* at 103.)

Ms. Wargo testified that she is employed by CYS as a kinship unit supervisor.  (*Id.* at 111.)  As part of her job duties, she supervised Ms. Zerr and reviewed Ms. Zerr's cases.  (*Id.* at 126.)  She stated that Ms. Zerr was not easily intimidated.  (*Id.* at 134.)  Ms. Wargo testified that during visitation with B.M., Petitioners had difficulty dividing their time between E.M. and B.M.  (*Id.* at 116.)  Further, during a meeting with Ms. Zerr and Petitioners, Ms. Wargo observed Mr. Torres-Columbo become agitated and argumentative.  (*Id.* at 118.)  Ms. Wargo also expressed concern about domestic violence in Petitioners' home.  (*Id.* at 126-27.)  Ms. Wargo testified that Ms. Hinnershitz has a tumultuous relationship with A.L., and that A.L. allegedly has an addiction to drugs and alcohol.  (*Id.* at 131-32.)  She did not believe that A.L. would agree with placing B.M. with Petitioners.  (*Id.* at 133.)

Mr. Hamarich testified that he is a licensed psychologist.  (*Id.* at 144.)  Mr. Hamarich performed the psychological evaluation of Mr. Torres-Columbo and recommended that Mr. Torres-Columbo should see a psychiatrist on a monthly basis.  (*Id.* at 145.)  He further recommended that Mr. Torres-Columbo increase his visits with his counselor from once a month to twice a month at a minimum.  (*Id.* at

4

146.) Mr. Hamarich explained that Mr. Torres-Columbo "was caught up in a very nonproductive pattern of arguing, fighting and feeling inept." (*Id.* at 146.) He believed that increased counseling would help Mr. Torres-Columbo become less defensive. (*Id.*) Mr. Hamarich did not believe that Mr. Torres-Columbo's altercation with A.L. indicated a lifelong problem with anger management. (*Id.* at 151.) Mr. Torres-Columbo denied drug or alcohol abuse, but he did smoke cigarettes. (*Id.* at 155, 158-59.) Mr. Torres-Columbo explained that his public drunkenness conviction was the result of an adverse reaction to prescription drugs, rather than intoxication. (*Id.* at 160.) Mr. Hamarich did not believe that Mr. Torres-Columbo presented a risk to children or that Mr. Torres-Columbo was violent towards Ms. Hinnershitz. (*Id.* at 161, 166.) Mr. Hamarich explained, however, that Mr. Torres-Columbo did have problems interacting with CYS, and that he should learn "to settle down and not respond as aggressively." (*Id.* at 162.)

Ms. Morganti testified that she is Ms. Hinnershitz's sister and that she has known Mr. Torres-Columbo for fifteen or twenty years. (*Id.* at 185.) She attended meetings with Petitioners and CYS on several occasions. (*Id.*) Ms. Morganti explained that Jacqueline Carpenter and Amy Shimmerhorn, CYS employees who are not a part of the kinship unit, did not answer Petitioners' questions concerning visitation with B.M. (*Id.* at 190-91.) Ms. Morganti testified that Ms. Carpenter slammed the door and became agitated when Ms. Morganti insisted on accompanying Ms. Hinnershitz and B.M.'s mother, T.M., to a meeting. (*Id.* at 199-200.) Ms. Morganti believed that B.M. should be placed with Petitioners, because B.M. "should be with family." (*Id.* at 207.)

Mr. Torres-Columbo testified that he is unemployed because he is disabled due to depression and post-traumatic stress disorder (PTSD). (*Id.* at

5

234-35.) Mr. Torres-Columbo was psychiatrically hospitalized prior to 2005, and he currently takes medications for his disorders. (*Id.* at 237-38.) He explained that he rarely drinks alcohol and that he did not see the question concerning alcohol use on the application. (*Id.* at 239.) Mr. Torres-Columbo testified that he is currently unable to return to work due to his depression and PTSD, but he is pursuing a GED. (*Id.* at 246.)

Mr. Torres-Columbo testified that prior to his altercation with A.L., he had asked A.L. to leave Petitioners' home. (*Id.* at 250.) The altercation that resulted was the only physical altercation that occurred between A.L. and Mr. Torres-Columbo. (*Id.*) Mr. Torres-Columbo argued with A.L. about A.L.'s abuse of drugs and alcohol. (*Id.* at 250.) Petitioners have tried to secure help for A.L.'s addiction problems, and A.L. has lived with them twelve times. (*Id.* at 251.) A.L. and Mr. Torres-Columbo have resolved their differences, and Mr. Torres-Columbo regrets his actions. (*Id.* at 262.) Mr. Torres-Columbo would permit A.L. to live in Petitioners' home if A.L. is able to end his drug and alcohol addictions and if A.L.'s presence did not negatively affect the children. (*Id.* at 263.) Mr. Torres-Columbo denied that his disputes with Ms. Hinnershitz became violent. (*Id.* at 253.)

Mr. Torres-Columbo explained that E.M. has autism, which causes behavioral problems such as aggression. (*Id.* at 255.) Due to his autism, E.M. requires a lot of attention from Petitioners. (*Id.* at 256.) E.M. has appointments with various specialists five days a week. (*Id.* at 258.) E.M. receives developmental medication, special education, and counseling services. (*Id.* at 256.) V.T. attends public school, a decision with which Mr. Torres-Columbo disagrees. (*Id.* at 265.)

6

After considering the DPW's regulations[2] concerning the approval of applicants as foster parents, the ALJ recommended that the DPW deny Petitioners' appeal:

[2] 55 Pa. Code § 3700.64 requires CYS to assess an applicant's capability as a foster parent using the following factors:

    (a) The [Foster Family Care Agency (FFCA)] shall consider the following when assessing the ability of applicants for approval as foster parents:

        (1) The ability to provide care, nurturing and supervision to children.

        (2) A demonstrated stable mental and emotional adjustment. If there is a question regarding the mental or emotional stability of a family member which might have a negative effect on a foster child, the FFCA shall require a psychological evaluation of that person before approving the foster family home.

        (3) Supportive community ties with family, friends and neighbors.

    (b) In making a determination in relation to subsection (a) the FFCA shall consider:

        (1) Existing family relationships, attitudes and expectations regarding the applicant's own children and parent/child relationships, especially as they might affect a foster child.

        (2) Ability of the applicant to accept a foster child's relationship with his own parents.

        (3) The applicant's ability to care for children with special needs, such as physical handicaps and emotional disturbances.

        (4) Number and characteristics of foster children best suited to the foster family.

        (5) Ability of the applicant to work in partnership with an FFCA.

The hearing record reflects that . . . [Petitioners] are not capable of providing care for additional relatives or foster children that might be placed in their home. The record demonstrates that . . . [Petitioners] may have the will but not the ability to provide a safe, healthy, nurturing and supervised environment for relatives and foster children; that they do not have the proven ability to work in partnership with . . . [CYS]; that they have a somewhat toxic, volatile, fragile and estranged relationship with Ms. Hinnershitz'[s] son A.L., which would certainly complicate the placement of any of A.L.'s children, or any other child placed in . . . [Petitioners'] home; and that Mr. Torres-Columbo has not demonstrated stable mental and emotional adjustment, among other concerns noted above.

(ALJ Op. at 16.) The ALJ further determined that CYS had not shown that Petitioners were incapable of taking care of a special needs child, nor had it shown that Petitioners lacked support from friends and family. Considering the evidence as a whole, the ALJ concluded that CYS properly denied Petitioners' application to become kinship care foster parents. The DPW adopted the ALJ's recommendation on September 29, 2014.[3] Petitioners petitioned this Court for review.

---

[3] Petitioners filed an application for reconsideration with the DPW on October 7, 2014. The date of Petitioners' appeal to this Court was October 24, 2014. On October 30, 2014, the DPW granted Petitioners' application for reconsideration and remanded the matter to the ALJ. The ALJ issued a revised opinion on December 4, 2014. When a petitioner files both a petition for review with this Court and an application for reconsideration with the agency, this Court has jurisdiction if the agency does not expressly grant reconsideration within thirty days of the filing of the final order. Pa. R.A.P. 1701(b)(3)(ii); 1 Pa. Code § 35.241(e)-(f). Here, the DPW did not grant reconsideration until October 30, 2014, more than thirty days after the issuance of the final order. Because the DPW did not timely grant the application for reconsideration, the application is deemed denied. *See* 1 Pa. Code § 35.241(e)-(f). Accordingly, the only opinion which we may consider is the opinion issued on September 29, 2014. In their petition for review and brief, Petitioners specifically challenge the September 29, 2014 opinion and order.

On appeal,[4] Petitioners argue that the ALJ erred in admitting irrelevant evidence, substantial evidence did not exist to show that Petitioners were untruthful on their application, substantial evidence did not exist to show that Petitioners were incapable of caring for a special needs child, substantial evidence did not exist to show that Mr. Torres-Columbo did not demonstrate stable mental and emotional adjustment, substantial evidence did not exist to show that Petitioners were incapable of working with CYS, and that the ALJ erred in failing to consider Petitioners' brief.

We first address Petitioners' argument that the ALJ erred in admitting irrelevant evidence. Specifically, Petitioners take issue with the admission of evidence concerning Mr. Torres-Columbo's criminal history as well as the admission of evidence that a temporary PFA was filed against Mr. Torres-Columbo. Petitioners argue that the evidence of Mr. Torres-Columbo's criminal history is irrelevant, because he was not convicted of a crime that would disqualify him from fostering children under 23 Pa. C.S. § 6344.[5] Petitioners further contend that the PFA is irrelevant because it was ultimately dismissed.

The Administrative Agency Law[6] provides: "Commonwealth agencies shall not be bound by technical rules of evidence at agency hearings, and

---

[4] "Our scope of review is limited to determining whether constitutional rights have been violated, whether the adjudication is in accordance with the law and whether the necessary findings of fact are supported by substantial evidence." *J.M. v. Dep't of Pub. Welfare*, 52 A.3d 552, 554 n.6 (Pa. Cmwlth. 2012).

[5] 23 Pa. C.S. § 6344(c) provides a list of criminal convictions that automatically disqualify an applicant, including, *inter alia*, criminal homicide, kidnapping, rape, and sexual abuse of children.

[6] 2 Pa. C.S. §§ 501-08, 701-04.

9

all relevant evidence of reasonably probative value may be received." 2 Pa. C.S. § 505. "Relevant evidence is that which tends to make a fact at issue more or less probable." *Agresta v. Gillespie*, 631 A.2d 772, 779 (Pa. Cmwlth. 1993), *overruled in unrelated part by City of Phila. Police Dep't v. Gray*, 633 A.2d 1090 (Pa. 1993). Here, the ALJ did not admit the evidence of Mr. Torres-Columbo's criminal history and PFA to show that he should be automatically disqualified as an applicant based on past convictions, that he had a propensity for violence, or that he had a drinking problem. Rather, the evidence was admitted to show that Petitioners were untruthful on their application when they responded that Mr. Torres-Columbo had no criminal history and that a PFA was never filed against him. The evidence was also admitted to demonstrate the strained relationship between Petitioners and A.L. In this respect, the evidence was relevant and admissible. Accordingly, we reject Petitioners' argument that the ALJ erred in admitting irrelevant evidence.

Petitioners next argue that substantial evidence[7] does not exist to show that Petitioners were untruthful on their application. Specifically, Petitioners take issue with the ALJ's determination that Petitioners were untruthful concerning whether Mr. Torres-Columbo was a smoker, whether he had been arrested in the past, and whether a PFA had ever been filed against him.

Petitioners argue that they were truthful with respect to Mr. Torres-Columbo's smoking habits, as he did not smoke at the time he filled out the application. They contend that he began smoking several months after

---

[7] "'Substantial evidence' has long been defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Mihok v. Dep't of Pub. Welfare*, 580 A.2d 905, 909 (Pa. Cmwlth. 1990).

10

filling out the application. Ms. Zerr, however, testified that she observed Mr. Torres-Columbo smoking in December 2013. (N.T., 7/22/14, at 83-84.) Mr. Hamarich's report in December 2013 indicated that, after a heart attack in June 2013, Mr. Torres-Columbo "continues to smoke knowing full well that he has been instructed by his physician with all seriousness that he should stop smoking." (C.R. at 58, N.T., 7/22/14, at 159.) Ms. Zerr and Mr. Hamarich's testimony constitutes substantial evidence to conclude that Mr. Torres-Columbo was a smoker, and, therefore, that Petitioners were untruthful on the application. Accordingly, we reject Petitioners' argument that they were truthful with respect to Mr. Torres-Columbo's smoking habits.

Petitioners next contend that they were truthful with respect to Mr. Torres-Columbo's arrest history. They argue that Mr. Torres-Columbo answered that he had never been arrested based on his understanding of the word "arrest." The criminal history report concerning Mr. Torres-Columbo, however, indicates that he was arrested on September 4, 2010, for simple assault. (C.R. at 66, 79.) This constitutes substantial evidence that Mr. Torres-Columbo was arrested, and, therefore, Petitioners were untruthful on their application. Accordingly, we reject Petitioners' argument that they were truthful regarding Mr. Torres-Columbo's arrest history.

Petitioners also argue that they were truthful concerning the PFA filed against Mr. Torres-Columbo. Specifically, they contend that although a temporary PFA had been filed against Mr. Torres-Columbo, the PFA never became final and the related criminal charges against him were ultimately dismissed. Petitioners admit that a temporary PFA was filed against Mr. Torres-Columbo, and the PFA is in the record. (Pet'r's Br. at 18, C.R. at 85-101.) Despite Petitioners' assertions

11

that the PFA was temporary, the application did not specify that applicants must only disclose final PFAs. (C.R. at 27.) Rather, the application sought disclosure of *all* PFAs, whether temporary or final. Petitioners' admission and the PFA constitute substantial evidence that Mr. Torres-Columbo had a PFA filed against him, and, therefore, Petitioners were untruthful on their application. Accordingly, we reject Petitioners' argument that they were truthful regarding the PFA filed against Mr. Torres-Columbo.

Petitioners next argue that substantial evidence does not exist to show that Petitioners could not take care of a child with special needs. Within this argument, Petitioners also contend that the ALJ ignored evidence that Petitioners were already taking care of a child with special needs. The ALJ, however, did not conclude that Petitioners could not take care of a special needs child. Rather, the ALJ determined:

> *[A]lthough . . . [CYS] did not show that . . . [Petitioners] could not handle a child placed in their home who had special needs since they already care for a special needs child*, E.M., what is significant to note is that the one special needs child currently in their home, E.M., requires quite a bit of time and attention to care for and has multiple appointments, almost on a daily basis. It is highly unlikely that . . . [Petitioners] would be able to handle another special needs child placed in their home, along with Mr. Torres-Columbo's 14-year old.

(ALJ Op. at 14 (emphasis added).) The ALJ, therefore, did not find that Petitioners were incapable of caring for a special needs child.[8] Rather, she reiterated her finding that Petitioners would be unable to care for an additional

---

[8] There is no indication that B.M. has any "special needs, such as physical handicaps and emotional disturbances." 55 Pa. Code § 3700.64(b)(3).

child.[9] This finding is supported by Mr. Torres-Columbo's testimony concerning Petitioners' exhaustive care of E.M., as well as Ms. Zerr's testimony that Ms. Hinnershitz had difficulty in getting E.M. to comply with her instructions. (N.T., 7/22/14, at 104-05, 255-59.) Accordingly, we reject Petitioners' argument concerning their ability to care for a child with special needs.

Petitioners next contend that substantial evidence did not exist to show that Mr. Torres-Columbo did not demonstrate stable mental and emotional adjustment. Petitioners cite Mr. Hamarich's report and claim that Mr. Hamarich did not believe that Mr. Torres-Columbo was a threat to children or that he was aggressive. Despite Petitioners' contentions, substantial evidence existed for the ALJ to find that Mr. Torres-Columbo did not exhibit mental and emotional stability. Mr. Torres-Columbo testified that he suffers from depression and PTSD, which are severe enough to prevent him from working. (*Id.* at 234-35, 246.) Mr. Hamarich recommended that Mr. Torres-Columbo seek further treatment. (*Id.* at 145-46.) Petitioners presented no admissible evidence that Mr. Torres-Columbo complied with Mr. Hamarich's recommendation.[10] Further, Ms. Zerr testified that

---

[9] Petitioners assert that the ALJ improperly stated that her opinion applied to B.M. and "any other relative or foster child that might be placed in their home." (ALJ Op. at 13.) Again, the ALJ was reiterating her finding that Petitioners are incapable of caring for an additional child at this time. The ALJ did not preclude Petitioners from applying to become foster parents in the future. We, therefore, reject Petitioners' argument concerning the applicability of the ALJ's opinion to future foster care applications.

[10] Petitioners sought to admit into evidence several letters from Mr. Torres-Columbo's counselors to show that Mr. Torres-Columbo was compliant with Mr. Hamarich's recommendations. These documents were excluded as hearsay. (N.T., 7/22/14, at 279.) Petitioners contend that these documents should have been admitted. Hearsay is defined as "an out-of-court statement offered to prove the truth of the matter asserted." *Six L's Packing Co. v. Workers' Comp. Appeal Bd. (Williamson)*, 2 A.3d 1268, 1275 (Pa. Cmwlth. 2010), *aff'd*, 44 A.3d
**(Footnote continued on next page…)**

Mr. Torres-Columbo's behavior towards CYS employees was aggressive. (*Id.* at 43-49.) Accordingly, we reject Petitioners' argument that substantial evidence did not exist to show that Mr. Torres-Columbo did not demonstrate stable mental and emotional adjustment.

Petitioners next contend that substantial evidence did not exist to show that Petitioners were not able to work in partnership with CYS. Specifically, Petitioners argue that if Ms. Zerr felt intimidated, she could have brought a co-worker to home studies with Petitioners. Substantial evidence exists to show that Petitioners were unable to work in partnership with CYS. Ms. Zerr testified that she was intimidated by Petitioners' aggressive behavior, even though she continued to meet with Petitioners alone. (*Id.*) The ALJ determined that Ms. Zerr's testimony was credible. Further, the ALJ provided additional reasons for finding that Petitioners were incapable of working with CYS. Specifically, the ALJ explained that she considered Petitioners' failure to truthfully complete the application and Mr. Torres-Columbo's failure to comply with Mr. Hamarich's recommendations in rendering her finding. Accordingly, we reject Petitioners' argument that substantial evidence did not exist to show that Petitioners were incapable of working in partnership with CYS.

---

**(continued…)**

1148 (Pa. 2012). Mr. Torres-Columbo's counselors did not testify before the ALJ, yet Petitioners offered the letters as proof that Mr. Torres-Columbo was compliant with Mr. Hamarich's recommendations. Such evidence constitutes hearsay, which the ALJ was permitted to exclude. Accordingly, we reject Petitioners' argument that the letters from Mr. Torres-Columbo's counselors should have been admitted into evidence.

14

Petitioners last argue that the ALJ erred in failing to consider their brief. Specifically, they contend that the ALJ did not consider their brief because it was submitted on September 18, 2014, rather than September 17, 2014. Petitioners assert that they attempted to fax their brief on September 17, but they were unable to connect after several attempts. Pursuant to the Administrative Code, the ALJ "shall fix the time for the filing and service of briefs." 1 Pa. Code § 35.191. "Briefs not filed and served on or before the dates fixed . . . may not be accepted for filing." 1 Pa. Code § 35.193. In the instant matter, the ALJ fixed the date for the filing and service of briefs as September 17, 2014. Petitioners did not serve their brief until September 18, 2014. Regardless of the reasons for Petitioners' delay, the brief was still submitted untimely. The ALJ did not err in failing to consider Petitioners' untimely brief.

Accordingly, we affirm the DPW's order.

_____
P. KEVIN BROBSON, Judge

15

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Kelly Hinnershitz and Manuel          :
Torres-Columbo,                        :
                 Petitioners          :
                                     :
              v.               :    No. 1977 C.D. 2014
                                       :
Department of Public Welfare,          :
                 Respondent           :

# **O R D E R**

AND NOW, this 12th day of August, 2015, the order of the Department of Public Welfare is hereby AFFIRMED.

                                             _____

                                      P. KEVIN BROBSON, Judge